## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JUSTYNA JENSEN, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | Case No. 1:24-cv-00191-MSM-LDA |
| RHODE ISLAND CANNABIS CONTROL | : | |
| COMMISSION AND KIMBERLY AHERN, | : | |
| IN HER OFFICIAL CAPACITY, | : | |
| *Defendants,* | : | |

## STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## INTRODUCTION

State Defendants, Rhode Island Cannabis Control Commission and Kimberly Ahern, in her official capacity (hereinafter collectively "State Defendants"), hereby submit this memorandum of law in support of their Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. At the outset, this Court lacks jurisdiction over the claims asserted in Plaintiff's Complaint. Plaintiff's mere intention to apply for a cannabis retail license, by means of an entity that does not yet exist, and under a regulatory licensing scheme that does not yet exist, is insufficient to establish a case or controversy eligible for redress by this Court. To the extent standing is conferred on Plaintiff, her claims fail for lack for ripeness.

Notwithstanding its jurisdictional flaws, the Complaint, that the Rhode Island Cannabis Act violates the dormant Commerce Clause ("DCC") and/or the Equal Protection Clause, also fails to state a claim upon which relief may be granted. Particularly, the dormant Commerce Clause is inapplicable to recreational use cannabis, which is federally illegal. Furthermore, Plaintiff fails to plead sufficient facts to show an equal protection violation. Accordingly, and consistent with similar suits Plaintiff has brought forth in other states, Plaintiff's lawsuit must be dismissed.

Finally, because Plaintiff lacks Article III standing and fails to state a claim upon which relief can be granted in her Complaint, State Defendants respectfully request that this Court address State Defendants' Motion to Dismiss prior to holding a Preliminary Injunction hearing.[1]  As discussed *infra*, the Rhode Island Cannabis Control Commission has not promulgated rules and regulations, and when that will occur is undetermined.  Accordingly, applications are not being accepted for general or social equity cannabis[2] retail licenses.  There is no immediate or urgent need that warrants hearing Plaintiff's Motion for Preliminary Injunction prior to a decision on State Defendants' Motion to Dismiss.

## **FACTUAL BACKGROUND**

### I.    **The Rhode Island Cannabis Act and its creation of the Rhode Island Cannabis Control Commission.**

The State of Rhode Island legalized recreational cannabis through the passage of the Rhode Island Cannabis Act ("Cannabis Act"), enacted on May 25, 2022.  R.I.G.L. § 21-28.11-1, *et seq*. Defendant, the Rhode Island Cannabis Control Commission ("Commission") was created by the Cannabis Act, and is tasked with overseeing "the regulation, licensing, and control of adult use and medical cannabis and upon transfer of powers pursuant to the provisions of § 21-28.11-10.1, to exercise primary responsibility to oversee the regulation, licensing and control of all cannabis and marijuana use to include medical marijuana."  R.I.G.L. § 21-28.11-4.  Defendant Kimberly

---

[1]    Should this Court reach the merits of Plaintiff's Motion for Preliminary Injunction, the State Defendants submit, contemporaneous with their Motion to Dismiss, a memorandum in support of their objection to Preliminary Injunction.  Plaintiff cannot meet the necessary elements required for the grant of a Preliminary Injunction, and accordingly, a preliminary injunction must be denied.

[2]    For clarity and consistency, State Defendants will refer to the substance at issue as "cannabis" rather than "marijuana," except where the term "marijuana" is used in other publications.

Ahern became the first Chairperson of the Cannabis Control Commission on June 13, 2023. The powers and duties of the Commission include, but are not limited to, the powers to "adopt, amend or repeal rules and regulations for the implementation, administration and enforcement of [the] chapter," to determine which applicants to award or deny licenses to, and to "determine and establish the process and methodology by which licenses shall be awarded by the commission." R.I.G.L. § 21-28.11-4.

Although the licensed sale of regulated cannabis as established by the Cannabis Act is permitted under Rhode Island law, the sale of cannabis remains a criminal offense under federal law. Pursuant to the Controlled Substance Act ("CSA"), Congress deemed cannabis a Schedule I drug and made any *interstate* cannabis trade illegal. 21 U.S.C. § 812(c) (2018); 21 U.S.C § 841(a) (2018). Despite the CSA, numerous states, including Rhode Island, have authorized the *intrastate* production, sale, and possession of cannabis in certain circumstances, and have regulated their *intrastate* market to protect the health, safety and welfare of their state's citizens.

## II. General retail licenses and social equity licenses will only be issued by the Rhode Island Cannabis Control Commission once its rules and regulations are promulgated.

The State Defendants eventually will be responsible for awarding cannabis retailer licenses to qualified applicants in the State of Rhode Island. However, State Defendants do not yet possess this licensing power. Currently, Rhode Island is in a "transitional period" as specific by the Act. R.I.G.L. § 21-28.11-10.1. To date, the only authorized licensed retailers of adult use cannabis in the State of Rhode Island are "hybrid cannabis retailers," meaning that the retailer was previously licensed as a "compassion center" that could only sell medical marijuana. During this transitional period, the hybrid cannabis retailers are not yet subject to the Commission's rules and regulations (as there are none, discussed *infra*). R.I.G.L. § 21-28.11-10(b). Currently, the Office of Cannabis

Regulation, within the Department of Business Regulation oversees the regulation of hybrid cannabis retailers. R.I.G.L. § 21-28.11-10.1(b). Only after the Commission issues its final rules and regulations, are hybrid cannabis retailers subject to the "Commissions rules and regulations for all sales authorization and renewals to include, but not limited to, any licensing requirements." R.I.G.L. § 21-28.11-10(c). To date, only those businesses currently licensed as a hybrid cannabis retailer are permitted to sell adult use cannabis in the State.

In addition to the existing hybrid cannabis retailers, the Cannabis Act permits the Commission, **after** its rules and regulations are promulgated, to grant twenty-four (24) retail licenses to qualified applicants. R.I.G.L. § 21-28.11-10.2(a). R.I.G.L. § 21-28.11-3(3) defines an "applicant" as "a Rhode Island resident **or** a business entity with a principal place of business located in Rhode Island to include, but not limited to, a corporation, limited liability company, limited liability partnership or partnership, and in which fifty-one percent (51%) of the equity in the business entity is owned by residents of Rhode Island, and the Rhode Island resident or business entity has made application for issuance of a license or certificate to own or engage in a cannabis business subject to the provisions of this chapter." (emphasis added). **Simply stated, a nonresident can still have an ownership interest in a Rhode Island retail cannabis license.**

Of those 24 retail licenses, six licenses are reserved for "social equity applicants." R.I.G.L. § 21-28.11-10.2(a)(3)(ii). The General Assembly specifically adopted a Social Equity Assistance Program and Fund to support social equity applicants in order to "reduce barriers to ownership and/or participating in the cannabis industry for individuals and communities most adversely impacted by the enforcement of cannabis-related laws." R.I.G.L. § 21-28.11-31. There are specific legislative findings in R.I.G.L. § 21-28.11-31 in support of the creation of the social equity program, which is essentially to remediate the harm caused to individuals by prior criminal

enforcement of conduct that is now legal.

A social equity applicant is defined by the Cannabis Act as:

"an applicant that has been disproportionately impacted by criminal enforcement of marijuana laws, including individuals convicted of a nonviolent marijuana offenses, immediate family members of individuals convicted of nonviolent marijuana offenses and individuals who have resided in disproportionately impacted areas for a least five (5) of the last ten (10) years, as determined by the commission after consultation with the cannabis advisory board, and further specified in the rules and regulations that shall identify factors and other considerations to be evaluated in certifying applications as social equity applicants, provided that such applicants shall at a minimum meet one of the following criteria.

(i)     An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who have resided for at least five (5) of the preceding ten (10) years in a disproportionately impacted area.

(ii)    An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who:

(A) Have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this chapter; or

(B) Is a member of an impacted family.

(iii)   For applicants with a minimum of ten (10) full-time employees, an applicant with at least fifty-one (51%) of current employees who:

(A) Currently reside in a disproportionately impacted area; or

(B) Have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this chapter or is a member of an impacted family.

(iv)    Can demonstrate significant past experience in or business practices that promote economic empowerment in disproportionally impacted areas.

(v)     Had income which does not exceed four hundred percent (400%) of the median income, as defined by the commission, in a disproportionally impacted area for at least five (5) of the past ten (10) years."

5

R.I.G.L. § 21-28.11-3(39).  "Disproportionately impacted area" is also defined by the Cannabis Act to be "a census tract or comparable geographic area that satisfies at least one of the following criteria as determined by the commission, that:

(i) The area has a poverty rate of a least twenty percent (20%) according to the latest federal decennial census;

(ii)  Seventy-five (75%) or more of the children in the area participate in the federal free lunch program according to reported statistics from the Rhode Island board of education;

(iii)  At least twenty percent (20%) of the households in the area receive assistance under the Supplemental Nutrition Assistance Program (SNAP);

(iv)  The area has an average unemployment rate, as determined by the Rhode Island department of labor and training, that is more than one hundred twenty percent (120%) of the national unemployment average, as determined by the United States Department of Labor, for a period of at least two (2) consecutive calendar years preceding the date of the application; or

(v)(A)  The area has disproportionately high rates of arrest, conviction, and incarceration related to the sale, possession, use, cultivation, manufacture, or transportation of cannabis in comparison to other communities and localities in the state; or

(B)  The area has a history of arrests, convictions, and other law enforcement practices in a certain geographic area, such as, but not limited to, precincts, zip codes, neighborhoods, and political subdivisions, reflecting a disparate enforcement of cannabis prohibition during a certain time period, when compared to the remainder of the state.

(vi)  The commission shall, with the recommendations from the cannabis advisory board and the chief equity officer, issue guidelines to determine how to assess which communities have been disproportionately impacted and how to assess if someone is a member of a community disproportionately impacted."

Id. at (23).

To be eligible for one of the 24 retail licenses, or one of the six social equity licenses, the applicant must meet a set of requirements.  R.I.G.L. § 21-28.11-10.2(b).  While the Cannabis Act has established a list of minimum requirements that the applicant must meet, the Commission will eventually establish additional eligibility requirements in its rules and regulations.  Id. at (b).

However, those additional requirements are not yet known because the Commission has not established them yet.

As stated *supra*, the Commission can only grant retail licenses **after** the Commission's rules and regulations are promulgated, which has not occurred.  Id. at (a).  The Cannabis Act states that "[f]inal issuance of the commission's rules and regulations means the rules and regulations adopted by the commission after compliance with requirements of chapter 35 of title 42 (the 'administrative procedures act' and chapter 46 of title 42 (the 'open meetings act') and shall not include any emergency, provisional or interim rules, regulations, requirements, orders, instructions or procedures."  R.I.G.L. § 21-28.11-3(39).

As of the date of Plaintiff's Complaint, and the filing of this response, the Commission's rules and regulations have not been promulgated, and as such, the Commission does not hold licensing power.  Rules and regulations regarding how the 24 licenses will be selected have not been established and the application period to apply for one of the 24 licenses, including the six equity licenses, is not open.  There is no time period prescribed by the Act that the Commission's rules and regulations must be promulgated by.  When an applicant will be able to apply for any type of retail license is undetermined.

**III.    Plaintiff asserts violations of the dormant Commerce Clause and Equal Protection Clause and alleges that she intends to apply for a license.**

Despite the fact that the Commission does not yet hold any licensing power, as there has not been final issuance of their rules and regulations surrounding the licensing scheme; that licenses are not even available for application; or that Plaintiff only "intends" to apply, but has not done so, Plaintiff brings the instant action against the Commission and its Chairperson. Particularly, Plaintiff challenges the Cannabis Act's partial residency requirement that applicants must meet to qualify for both a general retail license and social equity license, alleging that this

requirement is in violation of the dormant Commerce Clause.  ECF 1, ¶¶ 29-36.  Further, Plaintiff challenges the disproportionately impacted area provision as it relates to the social equity program, alleging that it is a violation of the Fourteenth Amendment's Equal Protection Clause.  Id. at ¶¶ 37-42.

Plaintiff states that she does not qualify for a general license because she is not a resident of Rhode Island and that she does not qualify for a social equity license because "she has never lived in Rhode Island; has never lived in a disproportionately impacted area; has never been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under Rhode Island law; and is not a member of an impacted family."  Id. at ¶¶ 27-28.  Plaintiff states that she "**intends** to apply for a License through a company in which she will own at least 51%."  Id. at ¶ 26 (emphasis added).  Plaintiff further claims that "[s]he has partnered with individuals who qualify as social equity applicants to submit retail cannabis business licenses in other states."  Id.  Plaintiff's mere intention to perform an act she is yet unable to do is insufficient grounds to support any cause of action alleged in her Complaint.

## LEGAL STANDARD

### I.     Rule 12(b)(1)

The proper vehicle for challenging a court's subject matter jurisdiction, including ripeness and standing, is Federal Rule of Civil Procedure 12(b)(1).  Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).  "A motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction may raise either a facial challenge (where the moving party asserts that the complainant's allegations are insufficient on their face to state a basis for federal jurisdiction) or a factual challenge (where the moving party argues that the court lacks jurisdiction as a matter of fact)."  Spencer v. Doran, No. 18-CV-1191-LM, 2021 WL 294556, at *2 (D.N.H. Jan. 28, 2021)

(citing Torres-Negron v. J &N Records, LLC, 504 F.3d 151, 162, 162 n. 8 (1st Cir. 2007) (citations omitted).  Regardless of the type of challenge, a plaintiff bears the burden of establishing standing. "The party invoking federal jurisdiction has the burden of establishing that it exists."  Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003).

In conducting its fact finding, "[t]he court may consider exhibits and other documents outside the pleadings on a Fed. R. Civ. P. 12(b)(1) motion." Cuomo v. U.S. Bank, N.A. for Bear Stearns Asset Backed Sec. I, LLC, 2006-HE5, No. CV 17-485 WES, 2018 WL 3993444, at *2 (D.R.I. Aug. 21, 2018); see also Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002).  In doing so, "the Court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  "The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion." Gonzalez, 284 F.3d at 288.

Finally, it is well settled that one person lacks the standing to advance the constitutional rights of another.  Zell v. Ricci, 321 F. Supp. 3d 285, 295 (D.R.I. 2018), aff'd in part, vacated in part, remanded, 957 F.3d 1 (1st Cir. 2020).

## II.     Rule 12(b)(6)

The standard for evaluating whether a plaintiff has stated a claim upon which relief can be granted requires a court to accept as true all well-pleaded facts alleged in the complaint and indulge all reasonable inferences in a plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). It is well settled, however, that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 557). This requires a

plaintiff to set forth more than unsupported conclusions or interpretations of law. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997). A court will then be able, in assuming the factual allegations of a plaintiff's claim to be true, to determine whether "the plaintiff has stated a ground for relief that is plausible." Ashcroft v. Iqbal, 556 U.S. 662, 696 (2009).

"In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it." Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 12 (1st Cir. 2004) (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003); Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 241 n.4 (1st Cir. 2002)). "This sometimes includes documents referred to in the complaint but not annexed to it." Id. (citing Coyne v. Cronin, 386 F.3d 280, 285-86 (1st Cir. 2004); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988)). Notably, "the jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice." Id. (citing Colonial Mortg. Bankers, 324 F.3d at 15-16; Boateng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000)).

## **ARGUMENT**

### I.  **Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction.**

State Defendants' Rule 12(b)(1) challenge implicates both doctrines of ripeness and standing.  Because Plaintiff's Complaint cannot withstand a challenge to the ripeness of its purported claims, or Plaintiff's standing to assert those claims, this Court cannot entertain it and the Complaint should be dismissed.

"Article III restricts federal court jurisdiction to "Cases" and "Controversies."  Reddy v. Foster,  845  F.3d  493,  499  (1st  Cir.  2017)  (citing  U.S.  Const.  art.  III,

§ 2). "That limitation on '[t]he judicial Power of the United States' is fundamental to the federal judiciary's role within our constitutional separation of powers." Id. (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), quoting U.S. Const. art. III, § 1). "Two of the limitation's manifestations are the justiciability doctrines of standing and ripeness, which are interrelated; each is rooted in Article III. Id.; see also Susan B. Anthony List v. Driehaus 573 U.S. 149 (2014) ("[T]he Article III standing and ripeness issues in this case 'boil down to the same question.'" (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 n.8 (2007)); Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975) (noting the "close affinity" between standing, ripeness, and mootness).

### A. Plaintiff lacks standing to challenge the partial residency requirement to be an applicant for a general retail license or a social equity retail license.

This Court must dismiss Plaintiff's Complaint for lack of subject matter jurisdiction because Plaintiff lacks standing pursuant to Article III of the United States Constitution to challenge the partial residency requirement to apply for a cannabis retail license. The question of standing is jurisdictional and includes three elements; a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547. Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021). The face of Plaintiff's Complaint shows that Plaintiff fails to satisfy the standing requirements necessary to proceed with her constitutional challenge against the State Defendants.

### 1. Plaintiff has not suffered an injury in fact.

Here, dismissal of Plaintiff's Complaint for lack of standing is warranted because Plaintiff has failed to plausibly show the "constitutional requirement" of an injury in fact, i.e., "invasion of

a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent," rather than "conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The Supreme Court in Spokeo clarified that "concrete" and "particularized" constitute independent, necessary requirements for standing, and that "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." Id. (quoting Black's Law Dictionary at 479 (9th ed. 2009)). Moreover, "[w]hen a plaintiff alleges unconstitutional discrimination in the awarding of a government contract or employment, they need not 'translate their desire ... into a formal application where that application would be merely a futile gesture.'" Jensen v. Maryland Cannabis Admin., No. CV 24-0273-BAH, 2024 WL 811479 at *4 (D. Md. Feb. 27, 2024) (quoting Carney v. Adams, 592 U.S. 53, 66 (2020)). "Instead, they need only demonstrate that they were 'able and ready' to apply and that 'a discriminatory policy' prevented them from doing so on equal footing with their competitors." Id. (quoting Gratz v. Bollinger, 539 U.S. 244, 262 (2003) and Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 666 (1993)).

The Plaintiff fails to make a showing that any alleged harm is actual or imminent. Plaintiff only contends that she intends to apply for a license, nothing more. This claim is entirely conjectural. Plaintiff fails to plead that she is able and ready to apply for a retail license. The statement that Plaintiff "intends" to apply with an unformed business entity with no identified partners who otherwise qualify for a retail license falls short of showing an imminent injury.

Besides the fact that retail licensing is not even available to apply for yet (and will not be for an undetermined amount of time), any harm to Plaintiff is speculative at best. Rhode Island is a limited license state. Notwithstanding that Plaintiff "intends" to apply for one of the limited licenses that will eventually be available, only 24 retail licenses will be awarded, including six

licenses set aside for qualified social equity applicants.  R.I.G.L. § 21-28.11-10.2.  Even if Plaintiff was qualified to apply for a license, it is entirely speculative that she would actually obtain a license in the first place, given that the demand for retail licenses will likely far exceed the number of licenses actually available—only 24 for the entire state.   Furthermore, the Cannabis Act also contains a "No right to license" provision which evidences further support that Plaintiff cannot demonstrate that she has or will suffer a concrete injury.  R.I.G.L. § 21-28.11-17.[3]  As Plaintiff has no entitlement or right to one of the 24 future retail licenses, Plaintiff cannot demonstrate that she has, or will at any point in the future, suffer an injury in fact.

> **2. Plaintiff fails to demonstrate that the State Defendants caused her injury or that her alleged injury is redressable.**

Plaintiff asserts that she "does not qualify for a general License solely because she has never lived in Rhode Island."  ECF 1 ¶ 27.  Plaintiff also avers that she "does not qualify for a social equity License because she has never lived in Rhode Island; has never lived in a disproportionately impacted area; has never been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under Rhode Island law; and is not a member of an impacted family."  Id. at ¶ 28.  Despite Plaintiff's own lack of residence within the State of Rhode Island, she can still be an owner of a Rhode Island cannabis retail establishment or

---

[3]      R.I.G.L. § 21-28.11-17.  No right to license.

   (a) Nothing contained in this chapter shall be construed as establishing a right in any person or entity to be issued a license or certificate pursuant to this chapter.

   (b) The commission shall exercise discretion to issue licenses and certificates to further the purposes of this chapter and may deny any application, suspend an application period, impose moratoriums on applications and/or issuance of licenses to further the purpose of public safety, the orderly administration of cannabis production, distribution and sale and to promote the purpose of this chapter.

   (c) No appeal for a denial of a license shall be sustained solely on the grounds that the person or entity satisfied the qualifications for issuance of a license.

a social equity retail establishment.  Again, the partial residency requirement in the Cannabis Act is not a total residency requirement.  Rather, the Cannabis Act only requires that the majority interest be held by Rhode Island residents, which advances a legitimate local objective directly tied to the necessary intrastate regulation of a federally illegal substance affecting the health and safety of its residents, as set forth in more detail below.  This means that an out of state resident, like Plaintiff, can hold a significant ownership interest in either a general retail license or social equity retail license, they just cannot hold the majority share of the retail license.

Instead of Plaintiff partnering with a Rhode Island resident to achieve her *assumed* end goal of owning a cannabis business in this state, Plaintiff asserts that she "intends to apply for a License through a company in which she will own at least 51% … [and] has partnered with individuals who qualify as social equity applicants to submit retail cannabis business licenses in other states."  ECF 1 at ¶ 26.  Plaintiff can become the owner of a cannabis retail establishment within the State of Rhode Island, she simply chooses not to partner with an individual or entity in the State of Rhode Island.  State Defendants have not caused Plaintiff to proceed in this fashion, and Plaintiff has not identified what, if any, harm she will suffer from holding less than a majority interest in her hypothetical future business that may or may not apply for a retail cannabis license at some unknown point in the future.

Furthermore, aside from the partial residency requirement, Plaintiff also admits that she does not qualify for a social equity license pursuant to the other statutory requirements for said license.  Id. at ¶ 28 and ECF 9, pg. 13.  Plaintiff is not challenging all other qualifications needed to be eligible for a social equity retail license.  "A plaintiff challenging the validity of a statutory provision cannot establish either causation or redressability [for Article III standing] where another statutory provision not subject to challenge would cause the plaintiff to continue to suffer the same

injury." Variscite, Inc. v. City of Los Angeles ("CA Variscite I"), No. 2:22-CV-08685-SPG-SK, 2022 WL 18397510, at *6 (C.D. Cal. Dec. 8, 2022) (citing Orion Wine Imps. LLC v. Appelsmith, 837 Fed. Appx. 585 (9th Cir. 2021)); see also Variscite, Inc. v. City of Los Angeles ("CA Variscite II"), No. 2:22-CV-08685-SPG-SK, 2023 WL 3493557, at *3 (C.D. Cal. Apr. 11, 2023).

In CA Variscite I, plaintiff Kenneth Gay, a Michigan resident with 51% equity in plaintiff Variscite, Inc. (a corporation organized under the laws of California), applied as a social equity applicant with the City of Los Angeles ("City"). 2022 WL 18397510, at *3. Pursuant to the City's cannabis law, an "applicant must be at least 51% owned by an individual who has been verified as a "Social Equity Individual Applicant ("SEIA") by Defendants." 2023 WL 3493557 at *1. The City had certain qualifications that a SEIA applicant need possess, which included that the applicant meet two out of three criteria: "(a) a qualifying 'California Cannabis Arrest of Conviction'; and (b)(1) 10 years of residency in a 'Disproportionately Impacted Area,' or (b)(2) 'Low Income' status in the 2020 or 2021 calendar year." Id. (emphasis in the original). Plaintiff Gay applied to be verified as a SEIA and submitted to defendants "(1) that he was convicted of a cannabis crime under Michigan law; (2) that he lived for more than ten years in an area the State of Michigan identified as a DIA; and (3) that he qualified as 'Low Income.'" Id. at *2. Essentially, plaintiff Gay believed that he met all of the qualifications needed of a SEIA applicant, except that the qualifying events occurred in Michigan, not California. Id. The City rejected plaintiffs as a SEIA, and they were therefore not permitted to enter into the lottery the City was to pick licenses from. Plaintiffs brought suit alleging that the residency requirement to achieve a SEIA license and general license (plaintiffs alleged that they intended to apply for a general license when that application opened) violates the DCC "because the criteria discriminates against non-California applicants." Id. Plaintiffs also moved for a temporary restraining order (TRO) and preliminary

injunction to prevent defendants from processing further applications and to halt the lottery process. Id.

First, the C.D. California District Court denied plaintiffs' motion for TRO, finding that plaintiffs lacked Article III standing because they "failed to demonstrate that their supposed constitutional injury was either caused solely by the challenged provisions of the Verification Criteria or that their injury is redressable by declaring the Verification Criteria unconstitutional because plaintiffs' SEIA application was denied for failing to satisfy other *unchallenged* and independent SEIA Verification Criteria requirements." Id. at *3 (emphasis in original). This was based on the City's determination that the plaintiff failed to satisfy any of the required criteria and case law in support holding that a plaintiff cannot overcome a lack of causation or redressability to prove Article III standing "where another statutory provision not subject to challenge would cause the plaintiff to continue to suffer the same injury." Id. (internal quotations omitted.).

Defendants in CA Variscite II then filed a Motion to Dismiss on three grounds: 1) no court in the Ninth Circuit had applied the DCC to state cannabis laws, 2) none of the City's criteria excluded out-of-state- residents from applying for a retail cannabis license, thereby not triggering the DCC, and 3) plaintiffs lacked standing because they could not satisfy the other unchallenged criteria required to be considered a SEIA.[4]  2023 WL 3493557 at *3.  In support of its Motion to Dismiss, the City relied upon a Declaration submitted in support of its Objection to Plaintiff's Motion for TRO that the plaintiffs did not otherwise meet the other criteria required to obtain a SEIA license.  Id. at *5.  In their objections to Defendants' Motion to Dismiss, plaintiff disputed

---

[4]    Plaintiffs also averred that the C.D. California District Court should abstain from exercising jurisdiction, however, this is intentionally not discussed as State Defendants are not asserting an abstention argument.  Variscite, Inc. v. City of Los Angeles ("CA Variscite II"), No. 2:22-CV-08685-SPG-SK, 2023 WL 3493557 at *3.

the entirety of the factual assertions contained in the Declaration.  Id.  The court determined that, because the disagreements as to the Declaration were subject to reasonable dispute and could not be verified as accurate, the court could not take judicial notice of the Declaration previously submitted in the TRO proceedings.  Id. at *6.  As such, the Court could only accept "as true the Complaint's allegation that Plaintiffs satisfied all requirements of the Verification Criteria," and denied Plaintiff's Motion to Dismiss on standing grounds.  Id.

The CA Variscite I decision in denying plaintiffs' TRO based on a lack of standing is applicable to the instant argument.  The CA Variscite II decision to deny the motion to dismiss is distinguishable.  Here, Plaintiff fails to allege sufficient facts to meet the definition of a social equity applicant, regardless of the partial residency requirement.  There are many ways to achieve status as a social equity applicant under the Rhode Island Cannabis Act.  Further, the Commission is provided discretion to decide additional qualifying criteria to grant social equity applicant status, which has not yet been spelled out in the Commission's future rules and regulations.  R.I.G.L. § 21-28.11-3(39).  Ultimately, Plaintiff fails to make a threshold showing or allegation that she has been arrested for a marijuana offense, is the immediate family member of an individual who had been arrested for prior marijuana enforcement, or any other way has been disproportionately impacted by criminal enforcement of marijuana laws that has been specifically identified by the legislature in creating this separate and distinct license type.  In fact, Plaintiff flat out admits that she "does not qualify for social equity in Rhode Island."  ECF 9, pg. 13.  This is clearly opposite from plaintiff Gay's allegation in CA Variscite I that he met the qualifications needed of a SEIA. 2022 WL 18397510, at *6.  Based on the allegations in the Complaint and Plaintiff's own admission that she does not qualify as a social equity applicant regardless of the partial residency requirement, Plaintiff fails to show causation and/or redressability.

**B. Plaintiff's challenge to the residency requirement is not ripe and not presently justiciable.**

In addition to Plaintiff's lack of standing, this Court lacks jurisdiction as Plaintiff's claims are not ripe.  Specifically, the Court should reject Plaintiff's attempt to seek premature judicial review of the Cannabis Act's partial residency requirement for retail licenses as the rules and regulations concerning the application for and issuance of those licenses have not yet been promulgated by the Commission. ECF 1, ¶ 24.  Simply put, the Commission cannot regulate what does not exist and cannot accept or deny any application for licensure until rules and regulations pertaining to the same have been promulgated.    As a result, Plaintiff cannot apply for a license because the application window has not opened.  Id. at ¶ 25.  Moreover, the rule making process has not been opened and the Commission cannot state with any degree of certainty when the rules and regulations will be promulgated.  As such, Plaintiff cannot establish any imminent injury capable of redress by this Court and Plaintiff's suit against the State Defendants is not ripe.

The Plaintiff "bear[s] the burden of alleging facts sufficient to demonstrate ripeness. Reddy, 845 F.3d at 501 (internal citations omitted).   "[A] facial challenge to a statute is constitutionally unripe until a plaintiff can show that a federal court adjudication would redress some sort of imminent injury that he or she faces."  Id.; see also Texas v. United States, 523 U.S. 296, 301 (1998) ("Here, as is often true, '[d]etermination of the scope…of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function'") (alterations in original) (quoting Int'l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd, 347 U.S. 222, 224 (1954)); Lab. Rels. Div. of Constr. Indus. of Massachusetts, Inc. v. Healey, 844 F.3d 318, 322 (1st Cir. 2016) (finding a lawsuit seeking "pre-enforcement relief…not ripe for adjudication no matter how it is best characterized along the facial/as-applied spectrum").

Ripeness is analyzed under two prongs: (1) Fitness and (2) Hardship. Reddy, 845 F.3d at 501. "The fitness prong 'has both jurisdictional and prudential components.'" Id. (quoting Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)). "The jurisdictional component of the fitness prong concerns 'whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts.'" Id. "The prudential component of the fitness prong concerns 'whether resolution of the dispute should be postponed in the name of judicial restraint from unnecessary decision of constitutional issues.'" Id. (quoting Roman Cath. Bishop, 724 F.3d at 89). "The hardship prong…is wholly prudential and concerns the harm to the parties seeking relief that would come to those parties from our withholding of a decision at this time." Id. (internal quotations omitted).

### 1. Fitness

In evaluating the fitness of Plaintiff's claims, "the critical question concerning fitness for review is whether the claim involved uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 536 (1st Cir. 1995) (quoting Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992)). "This question reflects the fact that judicial decisions cannot be based on speculative facts or a hypothetical record." Operation Clean Gov't v. Rhode Island Ethics Comm'n, 315 F. Supp. 2d 187 (D.R.I. 2004) (citing Ernst & Young, 45 F.3d at 536).

Plaintiff has not presented, and cannot present, a live controversy for this Court to adjudicate or redress. First, as stated *supra* and as admitted by Plaintiff, the State Defendants "have not promulgated Regulations for Licenses." ECF 1, ¶ 24. As the State Defendants have not issued the final rules and regulations, there is no "application system for Licenses." Id. at ¶ 25. Without any rules or regulations promulgated, the State Defendants do not have the authority to

accept, approve or deny license applications.  On this basis alone, a live controversy or case is nonexistent against the State Defendants.

Moreover, central to the Plaintiff's Complaint is the speculative claim that she only "**intends** to apply for a license." Id. at ¶ 26 (emphasis added).  Plaintiff fails to describe any actual steps she has taken in preparation to apply for a general or social equity retail license, other than that she "intends to apply for a License through a company in which she will own at least 51%" Id.  This vague statement is nothing more than a hypothetical possibility that lacks any certainty, imminency, or urgency whatsoever.  Plaintiff's claims fail to meet the fitness prong required in a ripeness analysis.

### 2.  Hardship

"The hardship inquiry 'encompasses the question of whether plaintiff is suffering any present injury from a future contemplated event.'" Operation Clean Gov't, 315 F. Supp. 2d at 196 (quoting McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003)).  "This hardship must not be a contemplated happening at some unspecified future date, but rather, must be injuring Plaintiff presently."  Id.; see also Rhode Island Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 33 (1st Cir. 1999) (stating that "hardship typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties").

As stated, Plaintiff only "intends" to apply for a general or social equity retail license and she "intends" to do so with a hypothetical business entity.  The rules and regulations governing the application process for such licenses are unknown as the State Defendants have not finalized them.  The rules and regulations will be promulgated at some unknown point in the future, but until then, the State Defendants do not have the authority to accept applications for or regulate retail licenses.  Accordingly, there is no hardship to the Plaintiff.

II.    **Plaintiff's Complaint should be dismissed for failure to state a plausible claim for relief against State Defendants.**

A. **Plaintiff's dormant Commerce Clause claim fails as a matter of law.**

If this Court were to address the merits of Plaintiff's claims, this case raises the issue of whether the United States Constitution provides a right to engage in Rhode Island's intrastate adult use cannabis market, which is illegal under federal law.   The Commerce Clause empowers Congress "[t]o regulate Commerce … among the several States."  U.S. Const. at I, § 8, cl. 3.  The United States Supreme Court has held that the Commerce Clause "also prohibits state laws that unduly restrict interstate commerce." Tenn. Wine & Spirits Retailers Ass'n v. Thomas, 139 S. Ct. 2449, 2459 (2019).   "This negative aspect of the Commerce Clause," known as the dormant Commerce Clause, "prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." Id. (internal quotations omitted).  While discriminatory laws are usually invalid, the discriminatory law may survive if it advances "a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." Dep't of Revenue of Ky. V. Davis, 553 U.S. 328, 338 (2008).  However, there is an exception that applies where the challenged law is expressly permitted by Congress.   Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Rsrv. Sys., 472 U.S. 159, 174 (1985) ("When Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause."). Furthermore, residency requirements are not automatically violative of the DCC, as long as there are grounds for the residency requirement other than state monetary interest protectionism. See Tenn. Wine, 139 S. Ct. at 2474.

Cannabis is illegal under federal law.  Pursuant to the Controlled Substances Act ("CSA"), it is unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," including cannabis.  21 U.S.C. § 841(a)(1).

"However, as to the use of cannabis for certain medical conditions, Congress has prohibited the Department of Justice ("DOJ") from using funds 'to prevent any [state] from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana.'" Variscite NY Four, LLC v. New York State Cannabis Control Bd., No. 123CV01599AMNCFH, 2024 WL 406490, at *1 (N.D.N.Y. Feb. 2, 2024); see Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, 136 Stat. 49, § 530 (2022) (the "Rohrabacher-Farr Amendment"); see also Brinkmeyer v. Washington State Liquor & Cannabis Board, No. C20-5661 BHS, 2023 WL 1798173, at *11 (W.D. Wash. Feb. 7, 2023) (noting that in "each fiscal year since fiscal year 2015, Congress has prohibited the [DOJ] from using its appropriated funds to take legal action against states that have implemented laws legalizing medicinal marijuana"), appeal dismissed, No. 23-35162, 2023 WL 3884102 (9th Cir. Apr. 11, 2023). "On the other hand, Congress 'has not amended the CSA to legalize marijuana for either medical or recreational use.'" Ne. Patients Grp. v. Me. Dep't of Admin. & Fin. Servs., 554 F. Supp. 3d 177, 182 (D. Me. 2021), aff'd sub nom. Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me., 45 F.4th 542 (1st Cir. 2022).

The Rhode Island Cannabis Act does not violate the dormant Commerce Clause. Plaintiff outright ignores the fact that a majority of courts have very recently rejected the argument that state adult use retail cannabis laws implicate or violate the DCC. See Brinkmeyer, 2023 WL 1798173, Peridot Tree WA Inc. v. Washington State Liquor & Cannabis Control Bd., No. 3:23-CV-06111-TMC, 2024 WL 69733 (W.D. Wash. Jan. 5, 2024), Jensen v. Maryland Cannabis Admin., No. CV 24-0273-BAH, 2024 WL 811479 (D. Md. Feb. 27, 2024), Variscite NY Four, LLC, 2024 WL 406490. Plaintiff erroneously relies on the First Circuit's decision in Ne. Patients Grp. 45 F.4th 542, however, the Ne. Patients Grp. case is distinguishable and inapplicable to the case at hand, as will be discussed infra.

Plaintiff's bald declaration that the Cannabis Act violates the DCC lacks any legal support or factual basis. When judging the sufficiency of a complaint, a court must therefore "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (1st Cir. 1998) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). This mandates that a plaintiff must set forth more than unsupported conclusions or interpretations of law. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997). A reviewing court will then be able, in assuming the factual allegations of a plaintiff's claim to be true, to determine whether "the plaintiff has stated a ground for relief that is plausible." Ashcroft v. Iqbal, 556 U.S. 662, 696 (2009).

1. **A majority of courts have previously determined that the Dormant Commerce Clause does not apply to intrastate cannabis markets as permitted by state law.**

    a. **Jensen v. Maryland Cannabis Admin. – decided on February 27, 2024.**

Courts have overwhelmingly struck down DCC challenges to state adult use cannabis laws. In fact, this Plaintiff recently brought suit and a motion for preliminary injunction in the United States District Court, District of Maryland, challenging Maryland's cannabis laws which permitted a social equity license to be awarded to applicants with at least 65% ownership and control and whom attended a college in the State of Maryland where at least 40% of students are eligible for a Pell Grant. Jensen, 2024 WL 811479 at *1-2. In contrast with the instant matter, Plaintiff applied for a social equity license in Maryland[5] in November 2023 and her application was rejected

---

[5]    Notably, and as opposed to Rhode Island, Maryland began the social equity license application process in September 2023. Id. at *2. The plaintiff applied for a social equity license and was denied in December 2023. Id. at *7. Plaintiff then filed suit in January, 2024, while Maryland was processing thousands of applications and expending hundreds of thousands of dollars to do so. Id. at 8.

because she attended a college in California, not Maryland.  Id. at *2.  Markedly, Plaintiff admitted that she did not meet the other alternative qualifications to obtain a social equity license, which were that she had lived in a disproportionately impacted area for at least five of the ten years immediately preceding her application or attended a public school in a disproportionately impacted area for at least five years.  Id. at *1-2.  Plaintiff only alleged that the "Pell Grant provisions and its implementing regulations unconstitutionally discriminate against out-of-state residents under the dormant Commerce Clause…"  Id. at *2.

The District of Maryland court rejected Plaintiff's request for preliminary injunction as it concluded that plaintiff failed to demonstrate a likelihood of success on the merits.  Id. at *8.  In doing so, the court held that the DCC does not apply to state recreational cannabis laws.  Id. at *10.  In support, the Maryland court stated "other courts across the country have held that the dormant Commerce Clause does not apply to state laws regarding recreational marijuana.  These courts have nearly universally reasoned that the dormant Commerce Clause does not apply to the recreational marijuana market because Congress has specifically made that market illegal at the federal level."  Id. (citing Peridot Tree Wa Inc., 2024 WL 69733, at *1 ("[T]he dormant Commerce Clause does not protect a right to participate in an interstate market that Congress has declared illegal."); Variscite NY Four, LLC, 2024 WL 406490, at *12 ("Given that the national market for cannabis is illegal, it would make little sense to apply the dormant Commerce Clause to New York's cannabis licensing scheme."); Brinkmeyer, 2023 WL 1798173, at *11 ("The dormant Commerce Clause does not apply to federally illegal markets, including Washington's cannabis market and, thus, it does not apply to Washington's residency requirements."), appeal dismissed, No. 23-35162, 2023 WL 3884102 (9th Cir. Apr. 11, 2023)).  In concluding its holding that the DCC does not apply to the state recreational cannabis industry, the Maryland court averred that

"it defies common sense to find that the dormant Commerce Clause, drawn from Congress' power to regulate interstate commerce, prevents the states from passing laws which inhibit a market which Congress has already declared prohibited. As the District Court for the Northern District of New York explained, applying the dormant Commerce Clause to the recreational cannabis market 'would only encourage out-of-state participating in the [in-state] cannabis market, which would be contrary to Congress' exercise of Commerce Clause power in enacting the [Controlled Substances Act.]'"

Id. at *11 (quoting Variscite NY Four, LLC, 2024 WL 406490, at *12 (brackets in original).

###    b.    **Variscite NY Four, LLC v. New York State Cannabis Control Bd.** – decided on February 2, 2024.

Counsel for Plaintiff also brought a DCC challenge to New York's cannabis law in December 2023, alleging that New York's "extra priority" given to Social and Economic Equity (SEE) applicants who have been convicted of a cannabis-related offense under New York law is violative of the DCC. Variscite NY Four, LLC, 2024 WL 406490, at *5-6. Like the Maryland District Court in Jensen, the United States District Court, N.D. New York held that the DCC does not apply to state cannabis licensing requirements. Id. at *12. The Variscite NY Four court acknowledged that "[t]here is a split of authority in the federal courts as to whether the [DCC] applies to state cannabis licensing requirements."[6] 2024 WL 406490, at *11. However, the Variscite NY Four court declared that said courts only "performed a [DCC] analysis[7] without

---

[6]    The courts and cases that the Variscite NY Four court referenced are NPG, LLC, 2020 WL 4741913, Variscite NY One, Inc. v. New York, 640 F. Supp. 3d 232 (N.D.N.Y. 2022), Toigo v. Dep't of Health and Senior Servs., 549 F. Supp. 3d 985 (W.D. Mo. 2021), Lowe v. City of Detroit, 544 F. Supp. 3d 804 (E.D. Mich. 2021), and Finch v. Treto, 606 F. Supp. 3d 811 (N.D. Ill. 2022), aff'd in part, dismissed in part, 82 F.4th 572 (7th Cir. 2023).

[7]    The DCC analysis utilizes a "two-tiered approach" to determine whether or not a state statute is in violation of the DCC: "(1) When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry. (2) When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." Brown-Forman Distillers Corp. v. N.Y.

directly addressing the threshold question of whether the [DCC] applies to a state licensing program for cannabis.  Id.  The Variscite NY Four court also recognized that the First Circuit has addressed whether the DCC applies to a state's cannabis licensing laws, however, this decision involved application of the DCC to Maine's full residency requirement for directors of medical cannabis dispensaries, not recreational use cannabis retailers.  Ultimately, the Variscite NY Four court agreed with Judge Gelpí's dissent in Ne. Patients Grp., 45 F.4th 542 (to be discussed below) in dismissing Variscite's DCC arguments.

> c. **Brinkmeyer v. Washington State Liquor and Cannabis Board- decided on February 7, 2023 and Peridot Tree WA Inc. v. Washington State Liquor and Cannabis Control Board – decided on January 5, 2024.**

The State of Washington has held that state recreational cannabis laws do not trigger the DCC.  In Brinkmeyer, the plaintiff challenged Washington's residency requirements to obtain a commercial recreational cannabis retail license.  2023 WL 1798173, at *1.  Specifically, the plaintiff could not hold an interest in his friend's existing cannabis store because of Washington's residency requirements.  Id. at *2.  The Brinkmeyer court correctly, and after a lengthy analysis, found that citizens do not "have a federal statutory or constitutional property right to cannabis while it remains federally illegal[,]" and ultimately held that the DCC does not apply to Washington's residency requirements contained in its recreational cannabis law.  Id. at *8.  The Peridot Tree WA, Inc. court, in a nearly identical challenge, followed the reasoning of the Brinkmeyer court's holding shortly thereafter, both in denying the plaintiff's Motion for Preliminary Injunction and the defendants' Motion to Dismiss.  See 2024 WL 69733.

---

State Liquor Auth., 476 U.S. 573, 578-79 (1986).

**2.  The First Circuit's decision in <u>Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine</u> is distinguishable and inapplicable.**

The State Defendants acknowledge that the First Circuit has concluded that the DCC is applicable to full residency requirements in the regulation of the medical cannabis industry as set forth in <u>Ne. Patients Grp.</u> 45 F.4th 542.  Particularly, the First Circuit has held that Maine's 100% residency requirement for directors of medical marijuana dispensaries triggered the DCC.  The First Circuit Court based its decision, in part, on the notion that "Congress, through the Rohrabacher-Farr Amendment, has acknowledged the existence of a [interstate] market in medical marijuana."  <u>Id.</u> at 553.  Pursuant to the Rohrabacher-Farr (also known as Rohrabacher-Blumenaur) budget amendment, "Congress instructed the Department of Justice that '[n]one of the funds' appropriated to the Department by Congress may be used 'to prevent [the states] from implementing their own laws that authorized the use, distribution, possession, or cultivation of **medical marijuana**.'"  <u>United States v. Sirois</u>, No. 1:21-CR-00175-LEW, 2023 WL 5333115 (D. Me. Aug. 18, 2023) (quoting Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, § 537, 133 Stat. 13, 138 (2019) (emphasis added).

The <u>Ne. Patients Grp</u>. decision is readily distinguishable from the case at hand.  Since the First Circuit's decision, many courts, as discussed within, have departed from this opinion and found the reasoning of the <u>Ne. Patients Grp.</u> decision inapplicable to recreational cannabis state laws for several reasons.  First, the <u>Ne. Patients Grp.</u> court relied on its reading of the Rohrabacher-Farr Amendment as effectively recognizing an interstate market in medical cannabis that is not federally prohibited.  <u>Ne. Patients Grp.</u>, 45 F.4th at 547-49.  Noticeably, the Rohrabacher-Farr Amendment does not apply to or include any language regarding recreational use cannabis.  Second, while medical marijuana is available to a limited market of consumers holding medical marijuana cards, recreational use marijuana is open to all adult consumers.  Plainly, there is not

27

any similar federal guidance as it relates to the regulation and enforcement procedures concerning recreational cannabis.  Therefore, because the basis for the court's decision in Ne. Patients Grp. is based on distinguishable facts, a similar finding by this Court that there is an interstate market in recreational cannabis that is not federally prohibited is without support.

For example, the Maryland District Court recently rejected the argument (in fact, the instant Plaintiff's argument) that Ne. Patients Grp. was applicable to cannabis laws involving recreational cannabis.  See Jensen, 2024 WL 811479 at *10.  Specifically, the Jensen court proclaimed that the First Circuit's decision in Ne. Patients Grp. "dealt exclusively with the medical marijuana market, which differs from the recreational cannabis market in important ways."  Jensen, 2024 WL 811479 at *10.  In analyzing this very Plaintiff's identical claim that Maryland's cannabis residency requirement violated the DCC, the Jensen court stated that "[w]hile there is undeniably an interstate market for recreational cannabis, the First Circuit's observation that Congress has acknowledged an interstate market for medical marijuana through the passage of the Rohrabacher-Farr Amendment has no applicability to this case, as Congress has passed no analogous provision relating to recreations cannabis."  Id. (citing Peridot Tree WA, Inc., 2024 WL 69733, at *8; Variscite NY Four, LLC, 2024 WL 406490, at *1).  As such, the Jensen court reiterated the opinion also held by the Peridot Tree WA, Inc. court that "[t]o the extent that Ne. Patients Grp. hinges on the impact of the Rohrabacher-Farr Amendment, this case is distinguishable."  Id.

In conjunction with courts across the country that found the DCC inapplicable to state recreational cannabis laws, the Jensen court found Judge Gelpí's dissent in Ne. Patients Grp., 45 F.4th at 558-59 (Gelpí, J., dissenting) persuasive, and found that "it defies common sense to find that the dormant Commerce Clause, drawn from Congress' power to regulate interstate commerce, prevents the states from passing laws which inhibit a market which Congress has already declared

prohibited." <u>Jensen</u>, 2024 WL 811479 at *11.  The <u>Jensen</u> court reiterated that the <u>Variscite NY Four</u> court also found that "applying the dormant Commerce Clause to the recreational cannabis market 'would only encourage out-of-state participation in the [in-state] cannabis market, which would be contrary to Congress' exercise of Commerce Clause power in enacting the [CSA].'" <u>Id.</u> (quoting <u>Variscite NY Four, LLC</u>, 2024 WL 406490, at *12).

For the reasons discussed above, <u>Ne. Patients Grp.</u> is not binding on this court.  The medical cannabis market and recreational cannabis market are not synonymous, and have not been treated the same by the federal government.  Congress has in no way authorized the interstate market of recreational cannabis or made express federal enforcement exceptions as it did pursuant to the Rohrabacher-Farr Amendment.  "If the dormant Commerce Clause applies to recreational cannabis laws … the only way Congress could so authorize the states would be to 'speak out of both sides of its mouth on this issue, simultaneously illegalizing marijuana while affirmatively granting states the power to burden interstate commerce in a manger which would otherwise not be permissible.'" <u>Id.</u> (quoting <u>Ne. Patients Grp.</u>, 45 F.4th at 559 (Gelpí, J., dissenting).

**B.  Plaintiff's Equal Protection Claim fails as a matter of law.**

Plaintiff also asserts a challenge to language in the Cannabis Act that, to qualify for a social equity license, the applicant must be "51% owed (sic) by an individual who lived in a disproportionately impacted area."  ECF 1, ¶ 39.  Specifically, Plaintiff claims that "[t]he Cannabis Act deprives individuals, including Plaintiff, of equal protection by preventing her from qualifying as a social equity applicant based on her area of residence."  <u>Id.</u> at ¶ 40.  As an initial matter, Plaintiff lacks standing to assert her equal protection claim.  As discussed *supra*, Plaintiff does not qualify for a social equity retail license based on other unchallenged criteria, which defeats her standing.  Further, Plaintiff's equal protection argument lacks merit and must be dismissed.

Pursuant to the Equal Protection Clause of the Fourteenth Amendment, states shall not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. 14, § 1.  The Equal Protection Clause "mandates that similarly situated persons be treated alike." Plyler v. Doe, 457 U.S. 202, 216 (1982).  However, "[a] law that draws distinctions among those it impacts does not automatically violate equal protection rights."  Perfect Puppy, Inc. v. City of E. Providence, 98 F. Supp. 3d 408, 418 (D.R.I.), aff'd in part, appeal dismissed in part sub nom. Perfect Puppy, Inc. v. City of E. Providence, R.I., 807 F.3d 415 (1st Cir. 2015) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)).  "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  Id.  "Only where the law uses such suspect classifications or infringes a fundamental right must the law be subjected to strict judicial scrutiny."  Id. (citing City of Cleburne, 473 U.S. at 440).  "To establish an equal protection violation, a plaintiff must show that: (1) compared with others *similarly situated*, [she] was selectively treated and (2) that such treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or *bad faith* intent to injure a person."  Id. (italics in original) (internal quotation marks omitted) (citing Barrington Cove Ltd. P'ship v. Rhode Island House. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)).

On the face of her Complaint, Plaintiff does not claim that she is part of a suspect class nor does she assert any fundamental right.  Plaintiff is not a member of any protected class.  Plaintiff fails to allege that she is a similarly situated individual as compared to others.  In fact, Plaintiff cannot possibly be considered to be similarly situated to other potential social equity applicants because she does not meet the statutory requirements to qualify as a social equity applicant to begin with.  "The law of equal protection requires more than superficial similarity, and without

any showing that [she] is similarly situated to those from whom it is singled out, Plaintiff cannot possibly demonstrate an equal protection violation." Id. at 419 (citing Cordi-Allen v. Conlon, 494 F.3d 245, 252 (1st Cir. 2007)).

Even if Plaintiff plead sufficient facts "to warrant a reasonable inference of substantial similarity," Cordi-Allen, 494 F.3d at 251, her Complaint lacks any evidence of "impermissible considerations" directing her treatment. Perfect Puppy, Inc., 98 F. Supp. 3d at 419. Plaintiff's Complaint fails to demonstrate that State Defendants have any "malicious or bad faith intent to injure." Id. (citing Barrington Cove, 246 F.3d at 7; Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) ("a plaintiff claiming to be singled out by government action must show that bad faith or malicious intent to injure caused differential treatment." (internal quotation marks omitted)).

Furthermore, because Plaintiff fails to set forth a fundamental right, this Court reviews the challenged law using rational basis review. See Brinkmeyer, 2023 WL 1798173 at *15 (finding that there is no fundamental right "to travel to another state to engage in federally illegal activity[,]" and therefore, holding that the residency requirement that applicants reside in a disproportionately impacted area is "not based on a classification that implicates a fundamental right.") "Under rational basis review, a law requires only some reasonably conceived set of facts that could establish a rational relationship between the challenged laws and the government's legitimate ends." Perfect Puppy, Inc., 98 F. Supp. 2d at 419 (internal quotation marks omitted) (citing Kittery Motorcycle, Inc. v. Rowe, 320 F.3d, 42, 47 (1st Cir. 2003)).

Besides the fact that a social equity applicant residing in a disproportionately impacted area is only one way—among many other ways set forth in the Cannabis Act and other ways yet to be decided by the Commission—to achieve social equity applicant status, there is a plausible basis for said criteria. The legislative findings contained within R.I.G.L. § 21-28.11-31 provide more

than a plausible basis for why residence in a disproportionately impacted area is based upon a rational government interest and serves as appropriate criteria for qualifying social equity applicants. Furthermore, although (as Plaintiff avers) "the definition of disproportionately impacted area has nothing to do with the actual applicant suffering any effect from enforcement of cannabis laws[,]" ECF 9, pg. 32, it is of no legal consequence if the State's reason for passing this single qualifying criteria "may be based on rational speculation unsupported by evidence or empirical date." Perfect Puppy, Inc., 98 F. Supp. 3d at 419 (quoting F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993)).

It is expected that Plaintiff will rely on a decision from a circuit court in Maryland in support of her equal protection challenge, entitled Maryland Hemp Coalition v. Moore, No. C-21-CV-23-348 (Cir. Ct. Wash Cty, MD, Oct. 12, 2023). ECF 9, pgs. 31-32. A copy of the unpublished decision is attached to Plaintiff's Declaration in support of her Motion for Preliminary Injunction. ECF 10-1. The Maryland state court analyzed whether a restriction of licenses to individuals who resided in specific geographic areas was violative of the Equal Protection Clause. The Maryland state court (at the circuit level) found that Maryland's cannabis law was in violation of the Equal Protection Clause. However, this case is easily distinguishable. Plaintiff's reliance on this state court case is erroneous and should be afforded zero weight.

Maryland Hemp Coalition should be completely disregarded. First, the plaintiffs were producers and retailers of hemp, which is legal under state *and* federal law. Second, the Maryland state court applied a different standard to its rational basis analysis, as that is the law in Maryland, not in the District of Rhode Island.[8] ECF 10-1, pg. 8. Third, the plaintiffs were previously operating their business pursuant to a license obtained through USDA, until Maryland cannabis

---

[8]     The Maryland state court stated that under the rational basis standard, "we presume that

laws, which "lumped" hemp and cannabis together, "halted their business."[9]  Id. at pgs. 3-4.  Under Maryland's new cannabis law, Plaintiff would have been required to obtain a new license to continue operating (which the Court discounted since hemp is legal under federal and state law), however, plaintiff did not qualify for a license due to geographic restrictions.  Id. at pgs. 3-5. **Again, Plaintiff had been operating legally under state and federal law <u>prior</u> to enactment of Maryland's cannabis law.**  This factual scenario is completely distinguishable and different from the instant case, where cannabis is federally illegal, Plaintiff does not meet any criteria necessary for a social equity applicant status, the rules and regulations have not been promulgated by the Commission, Plaintiff was not previously operating a cannabis business in the State, and social equity retail license applications are not being accepted.

Plaintiff utterly fails to show any equal protection violation.  Accordingly, Count II must be dismissed for lack of standing and failure to state a claim upon which relief can be granted.

<u>**CONCLUSION**</u>

For the reasons set forth herein, and any additional arguments made at a hearing should this Court require it, State Defendants' Motion to Dismiss must be granted.  Accordingly, State Defendants respectfully request that the Court dismiss the Plaintiff, Justyna Jensen's Complaint.

---

the challenged statute is constitutional, and will uphold it unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [we] can only conclude that the [State's] actions were irrational."  Id. (citation omitted).

[9]    Under the new Maryland law, "only those producers and retailers of illicit delta-9 THC products who previously received licenses under the medical marijuana program were allowed to grow, produce, and sell THC products.  In other words, although their products were still legal under state and federal law, Plaintiffs lost the right and opportunity to sell them solely due to the CRA (Cannabis Reform Act) licensing scheme."  Id. at pg. 3.

Respectfully Submitted,

**STATE DEFENDANTS,**

By Their Attorneys:

**PETER F. NERONHA**
**ATTORNEY GENERAL**

*/s/ Matthew Shaw*
*/s/ Chelsea Baittinger*
**MATTHEW SHAW** (Bar No. 7325)
Assistant Attorney General
**CHELSEA BAITTINGER** (Bar No. 9471)
Special Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
150 South Main St.
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2226
Fax: (401) 222-2995
MShaw@riag.ri.gov
CBaittinger@riag.ri.gov

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on July 22, 2024, I filed and served the herein document through the electronic filing system on the attorneys of record. The herein document electronically filed and served is available for viewing and/or downloading from the ECF Filing System.

*/s/ Chelsea Baittinger*

34