## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

JUSTYNA JENSEN,                                    :
     *Plaintiff*,                                :
                                               :
v.                                                 :
                                               :  Case No. 1:24-cv-00191-MSM-LDA
RHODE ISLAND CANNABIS CONTROL                      :
COMMISSION AND KIMBERLY AHERN,                     :
IN HER OFFICIAL CAPACITY,                          :
     *Defendants*,                              :

### STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

State Defendants, Rhode Island Cannabis Control Commission and Kimberly Ahern, in her official capacity (hereinafter collectively "State Defendants") object to Plaintiff, Justyna Jensen's (hereinafter "Plaintiff") Motion for Preliminary Injunction ("Motion"). ECF 9. Plaintiff's Motion fails to satisfy the four-factor legal standard for the entry of a Preliminary Injunction and should be denied.

State Defendants incorporate herein by reference the arguments presented in their Motion to Dismiss Plaintiff's Complaint as equally applicable in this objection to Plaintiff's Motion and will not belabor these arguments by restating them. Rather, State Defendants will highlight further relevant arguments that are germane to the elements necessary to grant a preliminary injunction.

As stated in State Defendants' Memorandum in Support of Their Motion to Dismiss, Plaintiff's claims are not justiciable as she lacks standing. Moreover, Plaintiff's claims are premature. Plaintiff's mere intention to apply for a cannabis retail license, by means of an entity that does not yet exist, and under a regulatory licensing scheme that does not yet exist, is insufficient to establish a case or controversy eligible for redress by this Court. Furthermore,

Plaintiff fails to state a plausible claim for relief as her legal claims under the Dormant Commerce Clause ("DCC") and Equal Protection Clause fail as a matter of law. ECF 13-1. As such, State Defendants respectfully request that this Court address State Defendants' Motion to Dismiss prior to holding a Preliminary Injunction hearing. Plaintiff's Complaint lacks exigency to warrant an immediate Preliminary Injunction hearing prior to this Court's decision on whether her Complaint survives a Rule 12(b)(1) and/or Rule 12(b)(6) challenge as the State Defendants have not promulgated any rules or regulations and license applications are not currently being accepted.

## FACTS AND TRAVEL

For convenience, State Defendants include the below facts which were presented in their Memorandum in Support of Their Motion to Dismiss. ECF 13-1.

**I.    The Rhode Island Cannabis Act and its creation of the Rhode Island Cannabis Control Commission.**

The State of Rhode Island legalized recreational cannabis through the passage of the Rhode Island Cannabis Act ("Cannabis Act"), enacted on May 25, 2022. R.I.G.L. § 21-28.11-1, *et seq.* Defendant, the Rhode Island Cannabis Control Commission ("Commission") was created by the Cannabis Act, and is tasked with overseeing "the regulation, licensing, and control of adult use and medical cannabis and upon transfer of powers pursuant to the provisions of § 21-28.11-10.1, to exercise primary responsibility to oversee the regulation, licensing and control of all cannabis and marijuana use to include medical marijuana." R.I.G.L. § 21-28.11-4. Defendant Kimberly Ahern became the first Chairperson of the Cannabis Control Commission on June 13, 2023. The powers and duties of the Commission include, but are not limited to, the powers to "adopt, amend or repeal rules and regulations for the implementation, administration and enforcement of [the] chapter," to determine which applicants to award or deny licenses to, and to "determine and establish the process and methodology by which licenses shall be awarded by the commission."

2

R.I.G.L. § 21-28.11-4.

Although the licensed sale of regulated cannabis as established by the Cannabis Act is permitted under Rhode Island law, the sale of cannabis remains a criminal offense under federal law. Pursuant to the Controlled Substance Act ("CSA"), Congress deemed cannabis a Schedule I drug and made any *interstate* cannabis trade illegal. 21 U.S.C. § 812(c) (2018); 21 U.S.C § 841(a) (2018). Despite the CSA, numerous states, including Rhode Island, have authorized the *intrastate* production, sale, and possession of cannabis in certain circumstances, and have regulated their *intrastate* market to protect the health, safety and welfare of their state's citizens.

## II. General retail licenses and social equity licenses will only be issued by the Rhode Island Cannabis Control Commission once its rules and regulations are promulgated.

The State Defendants eventually will be responsible for awarding cannabis retailer licenses to qualified applicants in the State of Rhode Island. However, State Defendants do not yet possess this licensing power. Currently, Rhode Island is in a "transitional period" as specific by the Act. R.I.G.L. § 21-28.11-10.1. To date, the only authorized licensed retailers of adult use cannabis in the State of Rhode Island are "hybrid cannabis retailers," meaning that the retailer was previously licensed as a "compassion center" that could only sell medical marijuana. During this transitional period, the hybrid cannabis retailers are not yet subject to the Commission's rules and regulations (as there are none, discussed *infra*). R.I.G.L. § 21-28.11-10(b). Currently, the Office of Cannabis Regulation, within the Department of Business Regulation oversees the regulation of hybrid cannabis retailers. R.I.G.L. § 21-28.11-10.1(b). Only after the Commission issues its final rules and regulations, are hybrid cannabis retailers subject to the "Commissions rules and regulations for all sales authorization and renewals to include, but not limited to, any licensing requirements." R.I.G.L. § 21-28.11-10(c). To date, only those businesses currently licensed as a hybrid cannabis

retailer are permitted to sell adult use cannabis in the State.

In addition to the existing hybrid cannabis retailers, the Cannabis Act permits the Commission, **after** its rules and regulations are promulgated, to grant twenty-four (24) retail licenses to qualified applicants. R.I.G.L. § 21-28.11-10.2(a). R.I.G.L. § 21-28.11-3(3) defines an "applicant" as "a Rhode Island resident **or** a business entity with a principal place of business located in Rhode Island to include, but not limited to, a corporation, limited liability company, limited liability partnership or partnership, and in which fifty-one percent (51%) of the equity in the business entity is owned by residents of Rhode Island, and the Rhode Island resident or business entity has made application for issuance of a license or certificate to own or engage in a cannabis business subject to the provisions of this chapter." (emphasis added). **Simply stated, a nonresident can still have an ownership interest in a Rhode Island retail cannabis license.**

Of those 24 retail licenses, six licenses are reserved for "social equity applicants." R.I.G.L. § 21-28.11-10.2(a)(3)(ii). The General Assembly specifically adopted a Social Equity Assistance Program and Fund to support social equity applicants in order to "reduce barriers to ownership and/or participating in the cannabis industry for individuals and communities most adversely impacted by the enforcement of cannabis-related laws." R.I.G.L. § 21-28.11-31. There are specific legislative findings in R.I.G.L. § 21-28.11-31 in support of the creation of the social equity program, which is essentially to remediate the harm caused to individuals by prior criminal enforcement of conduct that is now legal.

A social equity applicant is defined by the Cannabis Act as:

"an applicant that has been disproportionately impacted by criminal enforcement of marijuana laws, including individuals convicted of a nonviolent marijuana offenses, immediate family members of individuals convicted of nonviolent marijuana offenses and individuals who have resided in disproportionately impacted areas for a least five (5) of the last ten (10) years, as determined by the commission after consultation with the cannabis advisory board, and further

specified in the rules and regulations that shall identify factors and other considerations to be evaluated in certifying applications as social equity applicants, provided that such applicants shall at a minimum meet one of the following criteria.

> (i)    An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who have resided for at least five (5) of the preceding ten (10) years in a disproportionately impacted area.

> (ii)    An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who:

>> (A) Have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this chapter; or

>> (B) Is a member of an impacted family.

> (iii)    For applicants with a minimum of ten (10) full-time employees, an applicant with at least fifty-one (51%) of current employees who:

>> (A) Currently reside in a disproportionately impacted area; or

>> (B) Have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this chapter or is a member of an impacted family.

> (iv)    Can demonstrate significant past experience in or business practices that promote economic empowerment in disproportionally impacted areas.

> (v)    Had income which does not exceed four hundred percent (400%) of the median income, as defined by the commission, in a disproportionally impacted area for at least five (5) of the past ten (10) years."

R.I.G.L. § 21-28.11-3(39).  "Disproportionately impacted area" is also defined by the Cannabis Act to be "a census tract or comparable geographic area that satisfies at least one of the following criteria as determined by the commission, that:

(i) The area has a poverty rate of a least twenty percent (20%) according to the latest federal decennial census;

(ii)  Seventy-five (75%) or more of the children in the area participate in the federal free

lunch program according to reported statistics from the Rhode Island board of education;

(iii)  At least twenty percent (20%) of the households in the area receive assistance under the Supplemental Nutrition Assistance Program (SNAP);

(iv)  The area has an average unemployment rate, as determined by the Rhode Island department of labor and training, that is more than one hundred twenty percent (120%) of the national unemployment average, as determined by the United States Department of Labor, for a period of at least two (2) consecutive calendar years preceding the date of the application; or

(v)(A)  The area has disproportionately high rates of arrest, conviction, and incarceration related to the sale, possession, use, cultivation, manufacture, or transportation of cannabis in comparison to other communities and localities in the state; or

    (B)  The area has a history of arrests, convictions, and other law enforcement practices in a certain geographic area, such as, but not limited to, precincts, zip codes, neighborhoods, and political subdivisions, reflecting a disparate enforcement of cannabis prohibition during a certain time period, when compared to the remainder of the state.

(vi)  The commission shall, with the recommendations from the cannabis advisory board and the chief equity officer, issue guidelines to determine how to assess which communities have been disproportionately impacted and how to assess if someone is a member of a community disproportionately impacted."

Id. at (23).

To be eligible for one of the 24 retail licenses, or one of the six social equity licenses, the applicant must meet a set of requirements.  R.I.G.L. § 21-28.11-10.2(b).  While the Cannabis Act has established a list of minimum requirements that the applicant must meet, the Commission will eventually establish additional eligibility requirements in its rules and regulations.  Id. at (b).  However, those additional requirements are not yet known because the Commission has not established them yet.

As stated *supra*, the Commission can only grant retail licenses **after** the Commission's rules and regulations are promulgated, which has not occurred.  Id. at (a). The Cannabis Act states that "[f]inal issuance of the commission's rules and regulations means the rules and regulations

adopted by the commission after compliance with requirements of chapter 35 of title 42 (the 'administrative procedures act' and chapter 46 of title 42 (the 'open meetings act') and shall not include any emergency, provisional or interim rules, regulations, requirements, orders, instructions or procedures." R.I.G.L. § 21-28.11-3(39).

As of the date of Plaintiff's Complaint, and the filing of this response, the Commission's rules and regulations have not been promulgated, and as such, the Commission does not hold licensing power. Rules and regulations regarding how the 24 licenses will be selected have not been established and the application period to apply for one of the 24 licenses, including the six equity licenses, is not open. There is no time period prescribed by the Act that the Commission's rules and regulations must be promulgated by. When an applicant will be able to apply for any type of retail license is undetermined.

### III.   Plaintiff asserts violations of the dormant Commerce Clause and Equal Protection Clause and alleges that she intends to apply for a license.

Despite the fact that the Commission does not yet hold any licensing power, as there has not been final issuance of their rules and regulations surrounding the licensing scheme; that licenses are not even available for application; or that Plaintiff only "intends" to apply, but has not done so, Plaintiff brings the instant action against the Commission and its Chairperson. Particularly, Plaintiff challenges the Cannabis Act's partial residency requirement that applicants must meet to qualify for both a general retail license and social equity license, alleging that this requirement is in violation of the dormant Commerce Clause. ECF 1, ¶¶ 29-36. Further, Plaintiff challenges the disproportionately impacted area provision as it relates to the social equity program, alleging that it is a violation of the Fourteenth Amendment's Equal Protection Clause. Id. at ¶¶ 37-42.

Plaintiff states that she does not qualify for a general license because she is not a resident

of Rhode Island and that she does not qualify for a social equity license because "she has never lived in Rhode Island; has never lived in a disproportionately impacted area; has never been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under Rhode Island law; and is not a member of an impacted family." Id. at ¶¶ 27-28. Plaintiff states that she "**intends** to apply for a License through a company in which she will own at least 51%." Id. at ¶ 26 (emphasis added). Plaintiff further claims that "[s]he has partnered with individuals who qualify as social equity applicants to submit retail cannabis business licenses in other states." Id. Plaintiff's mere intention to perform an act she is yet unable to do is insufficient grounds to support any cause of action alleged in her Complaint.

## **LEGAL STANDARD**

Injunctive relief is an "extraordinary and drastic remedy" warranted "only when necessary to safeguard a litigant's legitimate interests," and should only be granted if the moving party can carry the "onerous burden of persuasion as to all of the elements." Charlesbank Equity Fund II v. Blinds to Go. Inc., 370 F.3d 151, 163 (1st Cir. 2004); Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Lyons v. Wall, C.A. No. 08-498, 2010 U.S. Dist. LEXIS 139482 *3 (D.R.I. Oct. 26, 2010) (citing *Mazurek* 520 U.S. at 968)). A plaintiff seeking a preliminary injunction must satisfy a four-factor test before a court may grant such relief. To prove the need for this form of drastic relief, a plaintiff must show that she is: (1) "likely to succeed on the merits"; (2) likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in [her] favor"; and (4) "that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Of these four factors, "[t]he movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020). "The Court should not award the extraordinary and drastic remedy of

a preliminary injunction unless the [plaintiff meets her] burden of persuasion with substantial proof." Dr. T. v. Alexander-Scott, 579 F. Supp. 3d 271, 280 (D.R.I. 2022), appeal dismissed sub nom. Dr. T. v. McKee, No. 22-1073, 2022 WL 2962029 (1st Cir. Apr. 13, 2022) (internal quotation marks omitted).

"'[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2948, at 129 (2d ed. 1995)). "Irreparable harm most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, 370 F.3d at 162. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Id.

## ARGUMENT

### I.    As an initial matter, this Court lacks jurisdiction to hear this case as Plaintiff's claims are not ripe and Plaintiff lacks standing.

State Defendants refer the Court to its arguments presented in their Motion to Dismiss in support of their position that this Court lacks jurisdiction to hear the instant case as Plaintiff lacks standing and/or her claims are unripe to proceed.

### II.    Likelihood of Success

Plaintiff brings a two-pronged challenge to Rhode Island's Cannabis Act (the "Act"). First, Plaintiff argues that the partial residency requirement contained within the Cannabis Act, which she claims the State Defendants will eventually enforce (on an undetermined date), violates the dormant Commerce Clause. ECF 1, ¶¶ 29-36. Second, Plaintiff argues that the requirement that a social equity applicant reside in a disproportionately impacted area, which is only one of ways

to achieve social equity applicant status, violates the Equal Protection Clause of the Fourteenth Amendment.  <u>Id.</u> at ¶¶ 37-42.

As explained in detail in State Defendants' Motion to Dismiss, Plaintiff fails to state a plausible claim for relief.  Clearly, she has not carried her burden of making a clear showing that she is likely to succeed on the merits of her challenge to the partial residency requirement. Plaintiff's claims under both the dormant Commerce Clause and Equal Protection Clause fail and she is not entitled to injunctive relief on these claims.

### a.    Plaintiff cannot succeed on the merits of her dormant Commerce Clause claim.

As discussed in further detail in State Defendants' Motion to Dismiss, Plaintiff's claim pursuant to the dormant Commerce Clause fails as a matter of law.  The majority of courts addressing the issue have held that the DCC is not implicated and does not apply to state recreational cannabis laws.  Refer to ECF 13-1; <u>see</u> <u>also</u> <u>Peridot Tree WA Inc, v. Wash. State Liquor & Cannabis Control Bd.</u>, No. 3:23-cv-06111-TMC, 2024 WL 69733, ay *9 (W.D. Wash. Jan. 5, 2024), <u>appeal</u> <u>docketed</u>, No. 24-209 (9th Cir. Jan. 12, 2024) (holding that the DCC does not "protect an interstate market that Congress affirmatively prohibited, given that protecting this market would facilitate illegal interstate activity.").  The United States Supreme Court has held that "Congress can authorize states to discriminate against interstate commerce."  <u>Jensen v. Maryland Cannabis Admin.</u>, No. CV 24-0273-BAH, 2024 WL 811479, *11 (D. Md. Feb. 27, 2024) (citing <u>S.-Cent. Timber Dev., Inc. v. Wunnicke</u>, 467 U.S. 82, 87-88, (1984) (proclaiming that "Congress may redefine the distribution of power over interstate commerce by permitting the states to regulate the commerce in a manner which would otherwise not be permissible." (internal citation omitted) (cleaned up)).

The <u>Jensen</u> court found that applying the DCC to recreational use cannabis is illogical.

10

2024 WL 811479 at *11.  The Maryland District Court went on to state that "[i]f the dormant Commerce Clause applies to recreational cannabis laws, however, the only way Congress could so authorize the states would be to speak out of both sides of its mouth on this issue, simultaneously illegalizing marijuana while affirmatively granting states the power to burden interstate commerce in a manner which would otherwise not be permissible."  <u>Id.</u> (citing <u>Ne. Patients Grp.</u>, 45 F.4th, 542, 559 (1st Cir. 2022) (Gelpí, J., dissenting) (internal quotation marks omitted)).  Here, Congress has been silent on the issue of adult use cannabis commerce and retail licensing.

Furthermore, even if the DCC were to apply to recreational cannabis licensing laws, the State of Rhode Island has a legitimate state interest to support its partial residency requirement for licensees of a highly regulated substance that is federally illegal.

**1.    The State of Rhode Island, including the Commission, has a legitimate state interest in the Cannabis Act's residency requirements.**

Even if this Court determines that the DCC is applicable to the challenged residency requirements, Plaintiff is still not likely to succeed on the merits of her claims.  It is well settled that residency requirements are not per se violative of the DCC if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  <u>Dept. of Revenue of Ky. v. Davis</u>, 553 U.S. 328, 338 (2008) (internal quotation marks omitted).  As all other courts who have rejected the notion that the DCC is applicable to recreational use cannabis state laws, this Court need not reach a decision on whether the partial residency requirement in the Cannabis Act advances a legitimate state interest.  However, if reached, the State Defendants can demonstrate a legitimate state interest grounded in health and safety of a closely regulated intrastate industry that is federally illegal.

First, the Cannabis Act's partial residency requirement survives DCC scrutiny because it is narrowly tailored to achieve legitimate state interests.  Notably, the definition of "applicant"

11

contained in R.I.G.L. § 21-28.11-3 allows an out of state resident to own up to 49% of the entity applying for a license. This is not a total residency requirement and the law does not prohibit out of state actors from owning or being involved in Rhode Island adult use cannabis retail businesses. Notwithstanding the fact that the Cannabis Act does not contain a total residency requirement, in pursuit of its legitimate state interest grounded in health and safety, the state closely regulates the legal cannabis industry within its borders by ensuring that licensees that own cannabis establishments with the state are subject to service and are able to be held accountable for unregulated activities or activities that violate federal law, including the Controlled Substances Act. The State achieves a safe and healthy regulation of the legal cannabis industry by tracking every single cannabis plant that is grown from seed to sale in a tracking system, thereby ensuring that cannabis grown by licensees does not enter the illegal market. See R.I.G.L. § 21-28.11-11.

Cannabis is federally illegal and subject to criminal prosecution under the federal Controlled Substances Act. Furthermore, unregulated cannabis sales remains illegal and subject to prosecution in the State of Rhode Island. "The Rhode Island Controlled Substances Act did not alter or otherwise change marijuana's status as contraband because it did not declassify marijuana as a controlled substance, regardless of quantity." State v. Li, 297 A.3d 908, 923 (R.I. 2023), cert. denied, 144 S. Ct. 1057, 218 L. Ed. 2d 240 (2024). "The Rhode Island Cannabis Act did not legalize the possession of marijuana full stop. Rather, it permits, among other things, an individual to possess up to one ounce of marijuana for recreational purposes, subject to the limitations set forth therein, as well as in the Rhode Island Controlled Substances Act." Id. (citing § 21-28.11-22(a)(1)). "The plan language of [the Rhode Island Cannabis Act and Rhode Island Controlled Substances Act] reflects the General Assembly's clear intent to criminalize an individual's possession of more than one ounce of marijuana for recreational purposes." Id. Despite recent

news of the possible federal rescheduling of cannabis, there is no federal regulation or regulatory scheme of the substance, and each state—including Rhode Island—has measures in place to closely regulate their medical and/ or adult use market in a manner to protect the health and safety of its residents.

In further support of that the Cannabis Act's partial residency requirement furthers a legitimate state interest, the Cannabis Act contains specific provisions to ensure that the industry is closely regulated and safe for the community, including requiring that each licensee undergo a national criminal background check, among other measures.  R.I.G.L. § 21-28.11-12.1.  With that said, the partial residency requirement in the Cannabis Act for all retail licensees serves a legitimate state interest and is not merely created to be protective of in-state financial interests.

Plaintiff argues in his Motion, without any actual factual support, that Congress contemplates an interstate market in adult use cannabis free from federal criminal enforcement which may be subject to state regulation.  She bases this statement on a portion of Attorney General Merrick Garland's testimony during his confirmation process.  This argument holds little, if not any, weight.  In fact, Plaintiff's counsel made this same argument in Jensen v. Maryland Cannabis Administration.  The Jensen court, in discrediting counsel's argument, stated that "the express passage of a piece of legislation by Congress is not the same as a non-binding sentiment expressed by an executive branch officer in a congressional hearing."  Jensen v. Maryland Cannabis Admin., No. CV 24-0273-BAH, 2024 WL 811479, n.12 (D. Md. Feb. 27, 2024).  This Court should find the same.

Finally, as further discussed in the State's Motion to Dismiss, courts across the country have held that the First Circuit's decision in Northeast Patients Group is inapplicable to the issue at hand.  See Brinkmeyer v. Washington State Liquor & Cannabis Bd., No. C20-5661 BHS, 2023

WL 1798173 (W.D. Wash. Feb. 7, 2023), <u>appeal dismissed,</u> No. 23-35162, 2023 WL 3884102

(9th Cir. Apr. 11, 2023); <u>Jensen</u>, 2024 WL 811479; <u>Peridot Tree WA, Inc.,</u> 2024 WL 69733;

<u>Variscite NY Four, LLC</u>, 2024 WL 406490.   Most recently, the Maryland District Court

distinguished the First Circuit's decision, stating that

> <u>Northeast Patients Group</u> dealt exclusively with the medical marijuana market,
> which differs from the recreational cannabis market in important ways. While there
> is undeniably an interstate market for recreational cannabis, the First Circuit's
> observation that Congress has acknowledged an interstate market for medical
> marijuana through the passage of the Rohrabacher-Farr Amendment has no
> applicably to this case, as Congress has passed no analogous provision relating to
> recreational cannabis.

<u>Jensen</u>, 2024 WL 811479 at *11 (citing <u>Peridot Tree WA, Inc.</u>, 2024 WL 69733, at *8; <u>Variscite</u>

<u>NY Four, LLC</u>, 2024 WL 406490, at *1).  Any reliance on <u>Northeast Patients Group</u> by Plaintiff

is entirely misplaced, distinguishable, and of no avail.

### b.  Plaintiff cannot succeed on the merits of her Equal Protection Clause claim.

In addition to the partial residency requirement that applicants must satisfy to apply for a

license, Plaintiff challenges one specific criteria, among many other criteria, that could qualify an

applicant for social equity applicant status.  Specifically, Plaintiff asserts that the criteria that the

applicant reside in a disproportionately impacted area is in violation of the Equal Protection

Clause.  As discussed in State Defendants' Motion to Dismiss, Plaintiff fails to allege that she is

part of a suspect class, nor does she identify or assert any fundamental right.  Plaintiff is not a

member of any protected class.  She fails to allege that she is a similarly situated individual as

compared to others, and as an individual who does not meet any of the criteria needed for social

equity applicant status, she cannot possibly be considered a similarly situated individual.

"The Equal Protection clause protects against governmental classifications that are

arbitrary and treat some groups of individuals less favorably than others who are similarly

situated." Wine & Spirits Retailers, Inc. v. State of Rhode Island & Providence Plantations, 364 F. Supp. 2d 172, 179 (D.R.I.), aff'd sub nom. Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36 (1st Cir. 2005). "Of course, that does not mean that any regulation that treats one group differently from another violates equal protection. Courts have recognized that classifications are not only permissible but necessary in any form of governmental regulation. " Id. at 179-180; see also Cotter v. City of Boston, 323 F.3d 160, 168 (1st Cir. 2004) (the equal protection clause "does not mandate that every citizen be treated identically, rather, it requires an adequate explanation for treating groups differently."); United States v. Craveiro, 907 F.2d 260, 265 (1st Cir. 1990) ("Legislative classification or 'drawing lines' does not violate equal protection when it distinguishes persons as dissimilar on some permissible basis in order to advance the legitimate interests of society."). "[T]he role of the courts in reviewing legislation alleged to violate equal protection is generally a deferential one; courts do not second-guess the wisdom or efficiency of state action, but merely seek to insure its rationality." Westenfelder v. Ferguson, 998 F. Supp. 146, 151 (D.R.I. 1998) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).

A court is to employ either a "strict scrutiny" test or "rational basis" test to determine whether a state statute violates the Equal Protection clause. Wine & Sprit Retailers, Inc., 364 F. Supp. 2d at 180. Which test to be used "depends on the type of classification and the nature of the activity regulated." Id. "If the statute burdens 'fundamental rights' such as voting rights or employs 'suspect' classifications such as race, a 'strict scrutiny' test is utilized in determining its constitutionality." Id. (quoting Kittery Motorcycle, Inc., v. Rowe, 320 F.3d 42, 47 (1st Cir. 2003). In contrast, "if the statute simply regulates economic activity conducted by business entities, it is judged under the less stringent rational basis test." Id. "[P]resumption of rationality can only be overcome by clear showing of arbitrariness or irrationality." Id. (quoting Hodel v. Indiana, 452

U.S. 314, (1981)).  "Put another way, such a statute passes muster under the Equal Protection clause unless the party challenging it demonstrates that there is no legitimate  purpose for the statute or that it does not amount to a reasonable means of achieving that purpose.  Id. (citing F.C.C v. Beach Communications, Inc., 508 U.S. 307, 315 (1993) (on rational basis review, "those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it" (internal quotation omitted)); Kittery Motorcycle, 320 F.3d at 47 (under rational basis standard, the government's classifications "bear[ ] a strong presumption of validity" and "the state … need only articulate some 'reasonably conceivable set of facts' that could establish a rational relationship between the challenged laws and the government's legitimate ends." (internal quotations and citations omitted)).

The Plaintiff concedes that rational basis is the appropriate test in analyzing whether the disproportionately impacted area criteria for social equity applicants is violative of the Equal Protection Clause.  Accordingly, Plaintiff has the burden to explain why this criteria is arbitrary or irrational, but does not.  Plaintiff offers no evidence to satisfy his burden other than citing to Maryland Hemp Coalition v. Moore, No. C-21-CV-23-348 (Cir. Ct. Wash Cty, MD, Oct. 12, 2023) which is easily distinguishable from the issue at hand for several reasons.  First, the plaintiffs were producers and retailers of hemp, which is legal under state *and* federal law.  Second, the Maryland state court applied a different standard to its rational basis analysis, as that is the law in Maryland, not in the District of Rhode Island.[1]  ECF 10-1, pg. 8.  Third, the plaintiffs were previously operating their business pursuant to a license obtained through USDA, until Maryland cannabis

---

[1]    The Maryland state court stated that under the rational basis standard, "we presume that the challenged statute is constitutional, and will uphold it unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [we] can only conclude that the [State's] actions were irrational."  Id. (citation omitted).

laws, which "lumped" hemp and cannabis together, "halted their business."[2] Id. at pgs. 3-4.  Under Maryland's new cannabis law, Plaintiff would have been required to obtain a new license to continue operating (which the Court discounted since hemp is legal under federal and state law), however, plaintiff did not qualify for a license due to geographic restrictions.  Id. at pgs. 3-5. **Again, Plaintiff had been operating legally under state and federal law <u>prior</u> to enactment of Maryland's cannabis law.**  This case is completely different from the instant case, where cannabis is federally illegal, Plaintiff does not meet any criteria necessary for a social equity license, the rules and regulations have not been promulgated by the Commission, Plaintiff was not previously operating a cannabis business in the State, and social equity retail establishment applications are not being accepted.

R.I.G.L. § 21-28.11-31(a)(1) expresses multiple and specific legitimate reasons for creating the social equity assistance program and fund and the creation of one qualifying criteria that the applicant reside or resided in a disproportionately impacted area.  Clearly, on its face, the state has a legitimate reason to include residence in a disproportionately impacted area as one of the criteria needed to achieve social equity status and be eligible to receive funding to support establishing an adult use cannabis retail establishment.  Further, awarding a social equity license to an applicant who has resided in an area impacted by the past enforcement of cannabis-related laws is rationally related to the state's interests of remedying harm that resulted from conduct that is now legal, as set forth in R.I.G.L. § 21-28.11-31(a)(1).

As the Plaintiff fails to set forth any concrete evidence that the disproportionately impacted

---

[2]      Under the new Maryland law, "only those producers and retailers of illicit delta-9 THC products who previously received licenses under the medical marijuana program were allowed to grow, produce, and sell THC products.  In other words, although their products were still legal under state and federal law, Plaintiffs lost the right and opportunity to sell them solely due to the CRA (Cannabis Reform Act) licensing scheme."  Id. at pg. 3.

area requirement is arbitrary or not rationally related to achieving a legitimate governmental purpose, Plaintiff fails to show a likelihood that she will succeed on the merits of her Equal Protection claim.

### III. Plaintiff will not suffer an irreparable harm should this Court deny her request for Preliminary Injunction.

Even if Plaintiff can prove a likelihood of success of the merits as to her dormant Commerce Clause and Equal Protection claims, Plaintiff must also show that she will suffer irreparable harm without a preliminary injunction. To establish irreparable harm, a plaintiff must show that she is likely to suffer irreparable injury – irremediable by monetary relief or other legal remedy – before a decision may be reached on the merits. Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011). Plaintiff has not and cannot do so for either of her claims.

Plaintiff will not suffer irreparable harm if the Court denies her Motion for Preliminary Injunction for several reasons. First, the Commission has not promulgated any rules or regulations and currently holds no licensing authority. The retail license application window is not open, and there is no date certain when applications will be accepted. Plaintiff cannot possibly suffer irreparable harm under a regulatory and licensing scheme that is yet to be developed. Second, when the application window opens, Plaintiff can still apply for ownership of a recreational use license—just up to 49% owner of a retail cannabis entity rather than a majority owner. As Plaintiff admits, she has partnered with other persons in other states to apply for a retail license, including persons qualified for social equity licenses in other states. ECF 10. Plaintiff offers zero explanation as to why the same ownership or share scheme cannot be done in Rhode Island. Furthermore, and even though one can become a social equity applicant in many different ways, Plaintiff does not qualify for a social equity license with or without meeting the criteria that she

18

reside in a disproportionately impacted area.

Despite the fact that the Commission has not promulgated any rules or regulations, the Cannabis Act and its challenged requirements were enacted in May of 2022. Plaintiff waited to initiate the instant action until two years later. This delay contributes to a lack of urgency. A "party's delay in bringing motion for preliminary injunction 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" Wine & Sprit Retailers, Inc., 364 F. Supp. 2d at 182 (quoting Jordache Enterprises, Inc. v. Levi Strauss & Co., 841 F.Supp. 506, 521 (S.D.N.Y. 1993) (internal quotation omitted)). This two-year delay negates any argument that Plaintiff would suffer irreparable harm absent a preliminary injunction. See, e.g., Potomac Heritage Trail Ass'n, Inc. v. United States Dep't of Transportation, No. CV DLB-22-2482, 2022 WL 7051160, *18 (D. Md. Oct. 11, 2022); Variscite NY Four, 2024 WL 406490, at *14; Peridot Tree WA, 2024 WL 69733, at *10.

Moreover, it should be noted that Rhode Island is a limited license state, and that the number of licenses that will be eventually available to qualified applicants is significantly lower than what is available for retail licenses in other states. Although the State Defendants have not promulgated any procedure for how future licensees will be selected, Rhode Island previously used a lottery system to a small number of retail licensees from a large pool of qualified applicants. If the State Defendants implement the same lottery system to choose its retail and social equity retail licenses, licenses will be awarded to the luck of the draw and no applicant will have a right to a license. In further support, the Cannabis Act contains a "No right to license" provision, R.I.G.L. § 21-28.11-17, clearly demonstrating that the legislature understood that demand could outweigh supply, and that no one applicant, however qualified, has a right to a license in Rhode Island's adult-use cannabis market—including Plaintiff. Plaintiff also fails to provide any evidence that

19

she is able and ready to apply for a license; rather she speculatively states that she intends to apply. As such, Plaintiff cannot plausibly establish an irreparable harm based on speculative assertions and this Court should deny Plaintiff's Motion.

### IV. The balance of the equities and public interest weighs in favor of State Defendants.

Plaintiff fails to establish the remaining factors – that the balance of the equities and the public interest weigh in her favor. Plaintiff simply reiterates her bald assertion of a constitutional violation, without any factual support. The United States Supreme Court has held "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, if suffers a form of irreparable injury." Maryland v. King, 567 U.S. 1301, 1303 (2012) (citing New Motor Vehicle Bd. of Cal. V. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehinquist, J., in chambers)).

Plaintiff dismisses the harm that a preliminary injunction would cause the Commission, the State of Rhode Island, and future applicants. The Commission has been tasked by the Cannabis Act to promulgate rules and regulations, a process that has been ongoing for quite some time (and unchallenged by the Plaintiff until two years later). The Commission has expended considerable time and resources in creating the rules and regulations so that it can prepare to accept and process cannabis licenses In contrast, Plaintiff has invested nothing in pursuit of a Rhode Island cannabis license. There is zero evidence that Plaintiff has actually partnered with an individual(s) who could qualify for a cannabis retail license, since she does not. The harm that the Commission and State will suffer should a preliminary injunction be granted is irreparable.

The public interest also heavily weighs in favor of denying the Plaintiff's requested injunctive relief at this juncture. The public has an interest in the state's safe regulation of the federally illegal recreational cannabis market. Licensing new cannabis retail businesses is

essential for the state to provide adult use consumers with safe cannabis that meets health and safety requirements. To delay licensing new retail cannabis businesses will harm the applicants who are ready and able to apply for a license once the application window opens. Presumably, the qualified applicants have spent time and resources preparing for the opportunity to own and run a retail cannabis establishment.

As such, Plaintiff fails to meet the remaining elements necessary for this Court to grant a preliminary injunction.

**V.    If the Court issues a Preliminary Injunction, it Should Require a Bond Sufficient to Compensate the Affected Nonparties and the State of Rhode Island.**

If the Court decides to grant a preliminary injunction halting the State Defendants work towards promulgating rules and regulations so that qualified applicants can apply for a license, it should also require a bond from Plaintiff. Fed. R. Civ. P. 65(c). "[A] bond is required where the injunction exposes the defendant to a risk of monetary loss." Crowley v. Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers, 679 F.2d 978, 1000 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984). Such a bond should cover, at a minimum, the costs State Defendants have expended in its journey to promulgate rules and regulations in accordance with the Cannabis Act.

## **CONCLUSION**

For the foregoing reasons, and those that may be stated at a hearing on the matter, this Court should deny Plaintiff's Motion for Preliminary Injunction, and respectfully requests that Plaintiff's Motion for Preliminary Injunction be stayed until such time that this Court rules on the State Defendants' Motion to Dismiss.

Respectfully Submitted,

**STATE DEFENDANTS,**

By Their Attorneys:

**PETER F. NERONHA
ATTORNEY GENERAL**

*/s/ Matthew Shaw*
*/s/ Chelsea Baittinger*
**MATTHEW SHAW** (Bar No. 7325)
Assistant Attorney General
**CHELSEA BAITTINGER** (Bar No. 9471)
Special Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
150 South Main St.
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2226
Fax: (401) 222-2995
MShaw@riag.ri.gov
CBaittinger@riag.ri.gov

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on July 22, 2024, I filed and served the herein document through the electronic filing system on the attorneys of record. The herein document electronically filed and served is available for viewing and/or downloading from the ECF Filing System.

*/s/ Chelsea Baittinger*