**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

JUSTYNA JENSEN,                         :
    *Plaintiff*,                    :
                                    :
v.                                      :
                                    :   Case No. 1:24-cv-00191-MSM-LDA
                                    :
RHODE ISLAND CANNABIS CONTROL           :
COMMISSION AND KIMBERLY AHERN,          :
IN HER OFFICIAL CAPACITY,               :
    *Defendants,*                   :

## STATE DEFENDANTS' EXPEDITED MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION AND FOR AN INDICATIVE RULING UNDER RULE 62.1

### INTRODUCTION

In April 2026, this Court entered a preliminary injunction enjoining Defendants Rhode Island Cannabis Control Commission and Michelle Reddish, in her official capacity[1] (hereinafter collectively "State Defendants"), from enforcing the then-existing partial residency requirements and certain challenged social equity criteria of the adult use retail cannabis licensing provisions of R.I. Gen Laws. § 21-28.11 ("the Cannabis Act") and from proceeding with the (then) current application process. Shortly thereafter, the General Assembly passed Senate Bill S3313, which was signed by Governor Daniel J. McKee on June 10, 2026. Senate Bill S3313 substantively amended the Cannabis Act by, *inter alia*, removing the residency requirements and social equity

---

[1] Kimberly Ahern, in her official capacity, was the original Defendant in this case. However, she is no longer in the role of Chair of the Cannabis Control Commission. As Ms. Ahern was sued only in her official capacity, her replacement in the role of Chair must result in the automatic substitution of her successor in that role: Michelle Reddish. *See* Fed.Rule Civ.Proc. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office.").

1

criteria that this Court had enjoined after finding that they were likely unconstitutional. Senate Bill S3313 further voided and nullified the prior application process and provided for the Commission to begin a new social equity certification process and a new retail license application process within 60 days using the amended statutory criteria.

Because the previously enjoined criteria in the Cannabis Act have been materially amended to address their potential constitutional infirmities and the enjoined prior application process has been nullified, the preliminary injunction, which applied to provisions in the prior version of the statute that no longer exist, is moot. The goals of this Court's preliminary injunction have now been made permanent by the General Assembly's legislative action. Thus, this Court's preliminary injunction is now moot and essentially a legal nullity. Accordingly, the State Defendants, move to dissolve the preliminary injunction,[2] or in the alternative, to clarify that the preliminary injunction is now moot and has no effect on the new application process set forth in the amended Cannabis Act. State Defendants believe it is patently clear that the preliminary injunction, by its own terms, has no effect on the newly amended statute and the new application process set forth therein, but in an abundance of caution seek confirmation from this Court.

State Defendants further respectfully request this Court to expedite consideration of this Motion so that the legal status of the preliminary injunction is promptly clarified in order to prevent the parties and the First Circuit from needlessly expending resources on an appeal that would be rendered moot if this motion is granted, and to provide clarity and avoid delay that could prejudice third parties as the Commission prepares to implement the new licensing and application process

---

[2] As the State Defendants will address in more detail in Section c *infra*, because the preliminary injunction is currently on appeal to the First Circuit, as of the date of this filing this Court technically lacks jurisdiction over the preliminary injunction; however, under Federal Rule of Civil Procedure 62.1 this Court may issue an indicative ruling that it would dissolve the preliminary injunction if the First Circuit remands for that purpose.

under the amended statute.

## FACTS AND TRAVEL

Plaintiff, Justyna Jensen ("Plaintiff") moved for a preliminary injunction in May 2024 (ECF No. 9). In April 2026, this Court granted Plaintiff's motion. (ECF No. 42). The Court issued a decision finding that the plaintiff had shown a likelihood of success on the merits that the partial residency requirement and the challenged social equity provisions of the Act were unconstitutional, based, *inter alia*, on the Dormant Commerce and Equal Protection Clauses of the U.S. Constitution. *Id.* at 13-22. Accordingly, the Court issued a preliminary injunction enjoining the State Defendants from enforcing the residency requirements and challenged social equity criteria from the Cannabis Act, specifically R.I. Gen Laws. § 21-28.11-3(3), § 21-28.11-3(23), § 21-28.11-3(34), § 21-28.11-3(39), and § 21-28.11-10.2(b)(2) (hereinafter, the "Challenged Provisions"), and the corresponding Rules and Regulations adopted by the Cannabis Control Commission. *Id.* at p. 27. The Court further enjoined the State Defendants from "proceeding with the *current* application or licensing period, including (1) holding the lottery to select applicants, and (2) processing any applications submitted under the *current* licensing period, for both Adult-Use and Social Equity licenses." *Id.* (emphases added).

The State Defendants appealed the Court's order granting the motion for a preliminary injunction, filling a Notice of Appeal on April 14, 2026. The State Defendants' appeal is currently pending before the First Circuit Court of Appeals and State Defendants' brief is expected to be due July 23, 2026.[3] *See* 26-1406.

Following this Court's order, the General Assembly passed Senate Bill S3313 (attached as

---

[3] State Defendants filed their first request for an extension on June 12, 2026, requesting an extension until July 23, 2026. That motion remains pending at this time.

Exhibit A). Senate Bill S3313 substantively amended the Cannabis Act, including the Challenged Provisions, to remove the partial residency requirements and social equity criteria that this Court had enjoined. Senate Bill S3313 further voided and nullified the prior application process and provided for a new application process to begin with the amended statutory criteria. Governor McKee signed Senate Bill S3313 into law on June 10, 2026. *See* https://files.constantcontact.com/95de6620601/3eecdff4-8277- 4bed-ace3-e11eb837dcb0.pdf.

With the substantive amendments to the Cannabis Act now enshrined into Rhode Island law with the passage and signature of Senate Bill S3313, "[t]he raison d'etre for the injunction no longer exists." *Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 193 (3d Cir. 2001) (quoting *Black United Fund of New Jersey, Inc. v. Kean,* 763 F.2d 156, 160 (3d Cir. 1985)). Accordingly, this Court should either dissolve the preliminary injunction or, in the alternative, provide the State Defendants with direction by clarifying that the that the preliminary injunction is now moot and has no effect on the new application process pursuant to the amended Cannabis Act.

## LEGAL STANDARD

Dissolution of a preliminary injunction is appropriate when the moving party "demonstrate[s] … that an intervening change in fact or law 'warrant[s] the discontinuation' of the preliminary injunction[]." *State of Washington v. U.S. Dep't of Housing & Urban Dev.*, 171 F.4th 473, 488 (1st Cir. 2026) (quoting *Concilio de Salud Integral de Loiza, Inc. v. Pérez-Perdomo*, 551 F.3d 10, 16 (1st Cir. 2008)); *see Pérez-Perdomo*, 551 F.3d at 16 ("[T]he standard that the district court must apply when considering a motion to dissolve [a preliminary] injunction is whether the movant has made a showing that changed circumstances warrant the discontinuation of the order.") (quoting *Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 242 (3d Cir. 2003))

(alterations in original). Qualifying circumstances warranting dissolution may consist of a "change in operative fact" or a "significant change either in factual conditions or in law." *Pérez-Perdomo*, 551 F.3d at 16 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)). The Court should consider a change in relevant circumstances "that emerged after its original order to determine whether it affects the four-prong preliminary injunction analysis[.]" *Washington v. HUD*, 171 F.4th at 488 (citing *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994); *see Knapp Shoes*, 15 F.3d at 1225 ("[W]e think it evident that in the ordinary case dissolution should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place.").

Because the preliminary injunction was not a final judgment that resolved the entirety of this case, it is an interlocutory order that may be dissolved or otherwise revised at any time before entry of a final judgment. *See* Fed. R. Civ. P. 54(b). Accordingly, the State Defendants' request that this Court dissolve the preliminary injunction "do[es] not necessarily fall within any specific Federal Rule "but instead "rel[ies] on the inherent power of the rendering district court to afford such relief from interlocutory judgments … as justice requires." *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.) (citation and quotation marks omitted). In the alternative, the Defendants invoke the provisions of Rule 60(b)(5), which the First Circuit has also cited in connection with requests to dissolve preliminary injunctions. *See Pérez-Perdomo*, 551 F.3d at 15-16. And under Rule 62.1(a), the Court may issue an indicative ruling that it would dissolve the preliminary injunction if the First Circuit were to remand the Defendants' appeal for that purpose under Federal Rule of Appellant Procedure 12.1. *See New York v. McMahon*, No. 25-1495, 2025 WL 3451815, at *1 (1st Cir. Sept. 15, 2025) (remanding preliminary injunction after "district court … issued an indicative ruling stating that on remand from this court the district court

would vacate the underlying preliminary injunction").

## ARGUMENT

### The passage of Senate Bill S 3313 is a significant legal change warranting dissolvement of the preliminary injunction

This Court's order granting a preliminary injunction rested on specific features of the Challenged Provisions, including a partial Rhode Island residency requirement for recreational adult use licenses and what the Court determined were residency-based social equity criteria. This Court ruled that those specific requirements and criteria were likely unconstitutional and thus found a likelihood of success on the merits for the Plaintiff. Likewise, it was those requirements and criteria that the Court enjoined the State Defendants from enforcing. And it is those exact same requirements and criteria that the General Assembly excised from the Cannabis Act with its statutory amendments codified in Senate Bill S3313. The General Assembly's passage of a bill that removes the challenged requirements and criteria from the Cannabis Act and nullifies the previous license application process is a significant and dispositive change warranting dissolvement of the preliminary injunction. *See United States Dep't of Hous. & Urb. Dev.,* 171 F.4th at 488 (courts consider motions to dissolve injunctions "in light of 'the new material' that [movants] presented to demonstrate a change in circumstances").

"Where a law is amended so as to remove its challenged features, the claim ... becomes moot as to those features." *Khodara*, 237 F.3d at 194 (quoting *Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1520 (11th Cir.1992)); *see Rembert v. Sheahan*, 62 F.3d 937, 940-41 (7th Cir. 1995) (holding that "an amendment that clearly rectifies the statute's alleged defects" will "naturally render[] a request for an injunction against application of that statute moot"). For example, in *Black United Fund of New Jersey*, the Third Circuit held that an intervening change to a challenged state statute rendered plaintiff's claim regarding the prior statute moot and required the reversal of the

6

mandatory preliminary injunction the district court had previously entered against enforcement of the prior statute. *See* 763 F.2d at 159-62. "Indeed," as the First Circuit has noted, "the Supreme Court …. has consistently and summarily held that a new state statute moots a case, without engaging in further inquiry." *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (citing, *inter alia*, *Hall v. Beals,* 396 U.S. 45, 48 (1969)*)*; *see Hall*, 396 U.S. at 48-50 (holding that plaintiffs' challenges to six-month state residency requirement in Colorado voting law were rendered moot by intervening statutory amendment to a shorter residency requirement that would not have prevented plaintiffs from voting in Colorado); *see also Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 449, 451-52 (1st Cir. 2009) (holding that district court's judgment, which granted permanent injunction against Puerto Rico's election commission mandating use of bilingual ballots, "should be vacated because it was rendered moot by an independent, intervening act of legislation" and that "this action by the legislature is a circumstance not attributable to the Commission as an individual administrative entity").

### a. Senate Bill S 3313 excises the requirements and criteria enjoined by the injunction

This Court's preliminary injunction order preliminarily enjoined the residency requirements and residency-based social equity criteria found in the prior version of the Cannabis Act. The General Assembly, through the passage of Senate Bill S3313, has now made the effects of the injunction permanent by amending the Cannabis Act to remove such requirements and criteria. ECF No. 42 at p. 27.

Specifically, the Court ordered that the residency requirement found in R.I. Gen Laws. § 21-28.11-3(3) be enjoined. *Id.* Senate Bill S3313 removes such residency requirement:

7

(3) "Applicant" means a ~~Rhode Island resident or a business entity with a principal place of business located in Rhode Island to include,~~ <u>person or a business entity including,</u> but not limited to, a corporation, limited liability company, limited liability partnership or partnership~~, and in which fifty-one percent (51%) of the equity in the business entity is owned by residents of Rhode Island, and the Rhode Island resident or business entity~~ <u>who</u> has made application for issuance of a license or certificate to own or engage in a cannabis business subject to the provisions of this chapter.

Ex. A at p. 1.

The Court further ordered that what the Court determined to be a residency requirement found in R.I. Gen Laws. § 21-28.11-3(23) be enjoined. ECF No. 42 at p. 27. Senate Bill S3313 deletes the entire section:

(23) "Disproportionately impacted area" means a census tract or comparable geographic area that satisfies at least one of the following criteria as determined by the commission, that:

(i) The area has a poverty rate of at least twenty percent (20%) according to the latest federal decennial census;

(ii) Seventy-five percent (75%) or more of the children in the area participate in the federal free lunch program according to reported statistics from the Rhode Island board of education;

(iii) At least twenty percent (20%) of the households in the area receive assistance under the Supplemental Nutrition Assistance Program (SNAP);

(iv) The area has an average unemployment rate, as determined by the Rhode Island department of labor and training, that is more than one hundred twenty percent (120%) of the national unemployment average, as determined by the United States Department of Labor, for a period of at least two (2) consecutive calendar years preceding the date of the application; or

(v)(A) The area has disproportionately high rates of arrest, conviction, and incarceration related to the sale, possession, use, cultivation, manufacture, or transportation of cannabis in comparison to other communities and localities in the state; or

(B) The area has a history of arrests, convictions, and other law enforcement practices in a certain geographic area, such as, but not limited to, precincts, zip codes, neighborhoods, and political subdivisions, reflecting a disparate enforcement of cannabis prohibition during a certain time period, when compared to the remainder of the state.

(vi) The commission shall, with recommendations from the cannabis advisory board and the chief equity officer, issue guidelines to determine how to assess which communities have been disproportionately impacted and how to assess if someone is a member of a community disproportionately impacted.

Ex. A at p. 4.

The Court also ordered that the social equity criteria found in R.I. Gen Laws. § 21-28.11-3(34) be enjoined. ECF No. 42 at p. 27. Senate Bill S3313 removes the challenged part of the section that references expungement and make explicit that the criteria does not discriminate based on residency:

(34) "Member of an impacted family" means an individual who has a parent, legal guardian, child, spouse, or dependent who, or was a dependent of an individual who, prior to ~~the~~

LC006499 - Page 5 of 25

~~effective date of this chapter~~ May 25, 2022, was arrested for, charged with, convicted of, or adjudicated delinquent for any cannabis offense that ~~is eligible for expungement~~ has been decriminalized under this chapter or for an offense from another jurisdiction that is equivalent to an offense that has been decriminalized under this chapter.

Ex. A at p. 5-6.

As Plaintiff argued in her motion for a preliminary injunction, "Rhode Island does not have authority to expunge convictions from other states ... [t]hus, only persons with Rhode Island convictions can qualify for Social Equity Applicant status[.]" ECF No. 42 at p. 6. The Court agreed in its order that "for social equity applicants, out-of-state convictions cannot be considered in place of in-state convictions because the regulations and statutory language explicitly require the conviction to be 'eligible for expungement under this chapter.'" *Id.* at p. 19. S3313 fixes this by removing reference to expungement and expressly referencing equivalent offenses from "another jurisdiction," thus expressly making its provisions applicable to jurisdictions outside of Rhode Island.

10

The Court also ordered that the residency-based social equity criteria found in R.I. Gen Laws. § 21-28.11-3(39) be enjoined. ECF No. 42 at p. 27. Senate Bill S3313 removes the challenged part of the section that references residency:

(39) "Social equity applicant" means an applicant ~~that has~~ with at least fifty-one percent (51%) ownership and control by one or more individuals who can show that they have been disproportionately impacted by criminal enforcement of ~~marijuana~~ cannabis laws~~, including individuals convicted of nonviolent marijuana offenses, immediate family members of individuals convicted of nonviolent marijuana offenses and individuals who have resided in disproportionately impacted areas for at least five (5) of the last ten (10) years, as determined by the commission after consultation with the cannabis advisory board, and further specified in the rules and regulations that shall identify factors and other considerations to be evaluated in certifying applicants as social equity applicants, provided that such applicants shall at a minimum meet~~ that in one of the following ~~criteria~~ ways:

~~(i) An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who have resided for at least five (5) of the preceding ten (10) years in a disproportionately impacted area.~~

~~(ii) An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who:~~

11

(A) Have (i) Has been arrested for, convicted of, or adjudicated delinquent for any cannabis offense that is eligible for expungement has been decriminalized under this chapter; or

(ii) Has been arrested for, convicted of, or adjudicated delinquent for any cannabis offense from another jurisdiction that occurred prior to May 25, 2022, that is equivalent to an offense that has been decriminalized under this chapter; or

(B)(iii) Is a member of an impacted family.

(iii) For applicants with a minimum of ten (10) full-time employees, an applicant with at least fifty-one percent (51%) of current employees who:

(A) Currently reside in a disproportionately impacted area; or

(B) Have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this chapter or is a member of an impacted family.

(iv) Can demonstrate significant past experience in or business practices that promote economic empowerment in disproportionally impacted areas.

(v) Had income which does not exceed four hundred percent (400%) of the median income, as defined by the commission, in a disproportionately impacted area for at least five (5) of the past ten (10) years.

Ex. A at p. 6-7.

The Court ordered that the residency requirement found in R.I. Gen Laws. § 21-28.11-10.2(b)(2) be enjoined. ECF No. 42 at p. 27. Senate Bill S3313 removes the residency requirement[4] found in that section:

---

[4] The General Assembly also removed additional residency requirements not explicitly referenced in the Court's preliminary injunction. *See* R.I. Gen Laws. § 21-28.11-7(f)(2); R.I. Gen Laws. § 21-28.11-9(b)(2); R.I. Gen Laws. § 21-28.11-11(c)(2).

(2) Provide proof that the applicant is twenty-one (21) years of age or older ~~and is a resident~~ ~~of the state~~ <u>with a valid form of government issued identification</u>;

Ex. A at p. 14.

Finally, the Court ordered that the (then) current license application process be enjoined. ECF No. 42 at p. 27. Senate Bill S3313 expressly nullifies the prior application process and provides for the reopening of a new application process under the amended statutory criteria:

**<u>21-28.11-17.2. Nullification of prior social equity and retail license application processes; Reopening of applications; Limitation on liability.</u>**

<u>(a) As of the effective date of this section, the social equity certification and license application processes previously run by the commission are hereby rendered null and/or void.</u>

<u>(b) Within sixty (60) days following the effective date of this section the commission shall:</u>

<u>(1) Commence a new social equity certification process and begin accepting applications to certify social equity applicants.</u>

(2) Institute a new retail license application process in accordance with this chapter. The commission shall refund any application fee amounts paid by an applicant for any prior retail license application process rendered null and/or void by this section.

(c) The commission shall proceed with the new application, approval, and certification processes for social equity and cannabis retail sales licenses consistent with this chapter and all severable portions of any existing non-conflicting regulations. The commission's new application, approval, and certification process(es) for social equity and cannabis retail sales licenses are not contingent upon the promulgation of new regulations to the extent those process(es) are compliant with this chapter and severable, non-conflicting portions of existing regulations. Any commission regulations in conflict with this chapter are hereby superseded to the extent of the conflict.

(d) No right of action shall exist on the grounds that a person, applicant or entity has previously but no longer satisfies the criteria for approved social equity applicant status. The commission shall in no way be held liable for any amounts paid, costs or damages incurred in connection with any application or certification process rendered null and/or void under this section.

(e) No right of action shall exist in connection with social equity certification processes or license application periods rendered null and/or void due to legislative amendment.

SECTION 3. This act shall take effect upon passage.

Ex. A at p. 23-25.

It is clear that the law (and operative facts) upon which this Court based its order issuing a preliminary injunction—the residency requirements and residency-based social equity criteria in the Cannabis Act—have significantly changed as the amended Cannabis Act removed such requirements and criteria entirely. The General Assembly has amended the Cannabis Act to remove the challenged sections entirely and to declare the prior application process null and void. Pursuant

14

to the amended provisions, the State Defendants anticipate  beginning the new application process based on the amended Cannabis Act.

### b. The four prong preliminary injunction standard now weighs in favor of dissolving the injunction

This Court's preliminary injunction order found that the Plaintiff had a strong likelihood of success on the merits because it found that the residency requirement and social equity criteria that it enjoined likely violate the Dormant Commerce Clause and the Equal Protection Clause of the U.S. Constitution. ECF No. 42 a p. 13-22. However, now that such requirements and criteria have been removed from the Cannabis Act, Plaintiff no longer has any claim for any constitutional violation that is likely to be successful on the merits. *See New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."). The allegations in the Complaint all pertain to the prior version of the statute that no longer exists; none of the allegations pertain to the amended current version of the law. To the extent Plaintiff seeks to still pursue any Constitutional claims related to the prior language of the statute, such claims would be moot.[5] *See Princeton Univ. v. Schmid,* 455 U.S. 100, 103 (1982) (holding that the substantial amendment of a challenged regulation mooted a case challenging its validity as this case has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law"). As the First Circuit (and United States Supreme Court)

---

[5] State Defendants intend to seek dismissal of this case based on mootness but due to its time sensitive nature (both in regards to the pending appeal and new licensing process), are first seeking an order dissolving the preliminary injunction.

15

have recognized, federal courts are "without power to grant injunctive and declaratory relief" against laws that "no longer exist." *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54-55 (1st Cir. 1999) (citing, inter alia, *Diffenderfer v. Central Baptist Church, Inc.*, 404 U.S. 412, 414-15 (1972)).

Furthermore, the balance of the equities weighs for dissolution of the injunction. With the instant injunction against enforcement of R.I. General Laws § 21-28.11-3(3), § 21-28.11-3(23), § 21-28.11-3(34), § 21-28.11-3(39), and § 21-28.11-10.2(b)(2) still technically in effect and no clear directive from this Court that the Cannabis Control Commission can begin a new application process under the materially different requirements of those provisions as they now stand under the amended Cannabis Act, the State Defendants and all potential applicants (including the Plaintiff) are subject to uncertainty about whether a new application process can proceed. This uncertainty and potential inability to begin the new application process harms the State Defendants who wish to comply with the amended Cannabis Act as expeditiously as possible. Indeed, Senate Bill S3313 requires the Cannabis Control Commission to commence the new application process within sixty days of the effective date of the bill. *See* R.I. Gen Laws. § 21-28.11-17.2(b). Potential applicants and the public also have an interest in the starting of the prompt new recreational adult use application process. *See Trump v. CASA, Inc*., 606 U.S. 831, 860–61 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)) (anytime the government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury").

Finally, Plaintiff faces no imminent harm as the provisions of the previous version of the Cannabis Act that this Court found likely unconstitutional are no more and the prior application process has been nullified. Moreover, Plaintiff herself would be harmed by the continued implementation of the injunction as it could impair her ability to submit an application during a

16

new application process—that is, if it has any effect at all. If the injunction is dissolved, that will ensure it is no barrier to the Commission's efforts to begin the new application process, which does not include any residency requirements, allowing the Commission to consider Plaintiff's potential future  application for a license without undue delay. Accordingly, all prongs of the preliminary injunction standard weigh in favor of dissolving the injunction. *See Knapp Shoes, Inc.*, 15 F.3d at 1225 ("dissolution should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place").

To be clear, the Commission is not suggesting that the language of this Court's preliminary injunction can or should be interpreted as enjoining the Commission from proceeding with a new license application period under the amended provisions of the Cannabis Act. To the contrary, because the preliminary injunction enjoined the Commission from enforcing statutory provisions that have since either been repealed or materially amended to remove the provisions that were the basis of this Court's decision that Plaintiff had shown a likelihood of success on the merits, it cannot reasonably be interpreted as preventing the Commission from proceeding under a materially different statute. Similarly, given that the General Assembly has now (1) nullified all prior applications submitted under the Challenged Provisions and (2) directed the Commission to open a new application period under the materially different amended provisions, the portion of the preliminary injunction preventing the Commission from processing those prior applications or issuing any licenses to prior applicants does not apply to those future proceedings. But for the avoidance of doubt and in respect for the Court, State Defendants believe it prudent to seek explicit confirmation from this Court that the preliminary injunction is moot and/or dissolved and has no effect on the newly amended statute and new application and licensing cycle set forth therein.

17

The need for clarity is underscored by the fact that, when contacted, Plaintiff's counsel refused to assent to a request to dissolve the preliminary injunction, although Plaintiff's counsel did not identify any basis for withholding assent.[6] *See Ctr. for Individual Freedom, Inc. v. Ireland*, No. CIV.A. 1:08-00190, 2008 WL 4452659, at *1 (S.D.W. Va. Sept. 29, 2008) ("[P]laintiff has not cited one case for the rather extraordinary proposition it espouses herein-i.e., that a court can enter a preliminary injunction prohibiting enforcement of statutes which thereafter undergo substantial amendment[] and that, without a new hearing or second motion for preliminary injunction, the preliminary injunction enjoins enforcement of the newly amended statutes. In fact, common sense and what little case law exists on the subject suggest otherwise."). Federal courts should not be in the business of issuing or enforcing unnecessary and ineffective injunctions. *See, e.g., Cy Wakeman, Inc. v. Nicole Price Consulting, LLC*, 284 F. Supp. 3d 985, 994 (D. Neb. 2018) ("It is black letter law that an injunction will not issue when it would be ineffectual.") (quoting *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1123 (5th Cir. 1985)); *Suárez Cestero v. Pagan Rosa*, 996 F. Supp. 133, 139 (D.P.R. 1998), aff'd, 172 F.3d 102 (1st Cir. 1999) ("'[A] court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff.'") (quoting *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 550 (1937)).

Plaintiff has not alleged, either in her Complaint or elsewhere, any claims or constitutional

---

[6] In the hopes of being able to present an assented-to request to the Court, counsel for State Defendants emailed Plaintiff's counsel on June 12, 2026 (2 days after the amended provisions were signed into law) regarding the State Defendants' intent to seek dissolution of the preliminary injunction based on the amended law and inquiring whether Plaintiff would assent; Plaintiff's counsel indicated that he would review and respond. Having not received a substantive response as of June 23, 2026, counsel for State Defendants followed up again on that date, and later that day received a communication from Plaintiff's counsel refusing to assent, but not providing any explanation or reasoning as to why Plaintiff believes the preliminary injunction is not moot.

issues with the amended statute or the new licensing and application process set forth therein. It is difficult to imagine how Plaintiff could have any claims against the amended law and process as the amendments remove each of the previously challenged features of the law. In any event, even if Plaintiff wished to bring new claims or allegations regarding the current version of the law and the current application process, she would need to amend her Complaint and file a new request for an injunction based on these materially new facts and law. There is absolutely no legal or factual basis to maintain the prior preliminary injunction that is based on and enjoins a dead law.

### c. This Court should dissolve its preliminary injunction pursuant to Fed.R.Civ.P. Rule 62.1

This Court's preliminary injunction order is currently on appeal before the First Circuit. Accordingly, this Court seemingly does not currently retain jurisdiction to modify the injunction. Nonetheless, the Court may issue an indicative ruling in favor of dissolving the injunction. Fed.R.Civ.P. Rule 62.1(a); *see Universal Truck & Equip. Co. v. Caterpillar, Inc.*, No. CA 10-466 S, 2015 WL 6671909, at *1 (D.R.I. Oct. 30, 2015) ("[r]ule 62.1 applies to motions filed with the district court that the court cannot grant because of a pending appeal"). As the First Circuit has recognized, "a district court faced with a motion that it 'lacks authority to grant because of an appeal that has been docketed and is pending'" is permitted to "state[ ] ... that it would grant the motion." *United States v. Cardoza*, 790 F.3d 247, 248 (1st Cir. 2015). In which case, the "movant must then 'promptly notify' the Court of Appeals' clerk of the district court's ruling" and the First Circuit can "then, if it chooses, 'remand for further proceedings but retain jurisdiction.'" *Id.* This Court should grant an order indicating that it would dissolve the preliminary injunction it put in place due to the significant change in circumstances brought about by the General Assembly's passage of Senate Bill S3313 if  the First Circuit remanded for that purpose. If the Court issues

19

such an indicative ruling, State Defendants would promptly notify the First Circuit. If the First Circuit remands the matter and this Court formally dissolves the preliminary injunction, then State Defendants would promptly notify the First Circuit and voluntarily dismiss their appeal as moot.

The Court's preliminary injunction should be dissolved because the requirements and criteria of the Cannabis Act that it enjoined no longer exist in the Cannabis Act. The Court could similarly issue an order clarifying that the preliminary injunction is now moot and has no effect on the current application process underway pursuant to the amended Cannabis Act. The State Defendants (as well as the Plaintiff and all other potential applicants) would benefit greatly by receiving expedited clarity confirming that the new application process, in conformity with the amended Cannabis Act, can move forward.

## CONCLUSION

The State has enshrined this Court's injunction order in law by removing the enjoined provisions from the Cannabis Act and nullifying the prior application process. Accordingly, this Court should now make it clear that the prior preliminary injunction has no effect on the new application process going forward under the amended Cannabis Act. Thus, the State Defendants respectfully ask that his Court dissolve the preliminary injunction, or in the alternative, clarify that the preliminary injunction is now moot and has no effect on the current application process underway pursuant to the amended Cannabis Act.

Respectfully Submitted,

**STATE DEFENDANTS,**

By Their Attorneys:

**PETER F. NERONHA
ATTORNEY GENERAL**

20

*/s/ Patrick Reynolds*
*/s/ Jeff Kidd*
Patrick Reynolds (#10459)
Jeff Kidd (#10416)
Special Assistant Attorneys General
150 South Main Street
Providence, Rhode Island 02903
Tel: (401) 274-4400, Ext 2109
preynolds@riag.ri.gov
jkidd@riag.ri.gov

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, hereby certify that on this 26th day of June, 2026, I filed the within document via the ECF filing system and that a copy is available for viewing and downloading

*/s/ Patrick Reynolds*

21