**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| JUSTYNA JENSEN,<br><br>      *Plaintiff*,<br><br>    v.<br><br>RHODE ISLAND CANNABIS CONTROL COMMISSION AND KIMBERLY AHERN, IN HER OFFICIAL CAPACITY,<br><br>      *Defendants*. | Civil Action No.: 1-24-CV-00191-MRD |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' EXPEDITED MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION AND FOR AN INDICATIVE RULING UNDER RULE 62.1**

1

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................. 3

II.     FACTS ............................................................................................................................. 7

III.    ANALYSIS ...................................................................................................................... 7

    A.  A Party Seeking to Dissolve a Preliminary Injunction Based on Voluntary Cessation

        Bears a Heavy Burden ............................................................................................... 7

    B.  Federal Rule of Civil Procedure 62.1 ...................................................................... 8

    C.  Defendants Have Not Shown the Preliminary Injunction Is Moot ................................... 8

IV.     CONCLUSION ............................................................................................................... 10

## I.     INTRODUCTION

Seven months ago, in December 2025, Plaintiff filed a Motion for Partial Summary Judgment on her dormant Commerce Clause claim.  If Defendants want to end this case, they can stipulate to a summary judgment and be finished.  In denying Defendants' Motion to Dismiss, the Court concluded Plaintiff stated her Equal Protection Clause claim.  As the Equal Protection claim raises a pure question of law, no factual development is needed for a summary judgment on that claim as well.  Thus, the Court can grant summary judgment to Plaintiff on all claims and the case can be over, or Defendants can take a consolidated appeal.  Notwithstanding Defendants' assertion in the motion that Plaintiffs refused to stipulate to dissolve the preliminary injunction without explanation, Plaintiff's counsel told Defendants' counsel during the meet and confer process that they would stipulate to a summary judgment in their favor.  Rather than discuss the proposal, Defendants filed this Motion.

Defendants' Motion for an Indicative Order is based on their argument they voluntary ceased the constitutional violations.  But at the March 20, 2026 hearing on the consolidated motions, when Plaintiff's counsel requested a ruling on Plaintiff's Motion for Summary Judgment, Defendants' counsel was adamant that Defendants would not waive the white flag and voluntarily give up their residency requirements.  Thus, Defendants have exposed their position that they will not voluntarily cease their constitutional violations absent a Court order.  The Court should at a minimum maintain the preliminary injunction and preferably rule on the Motion for Summary Judgment.

Defendants concede in their Motion that "because the preliminary injunction is currently on appeal to the First Circuit, as of the date of this filing this Court technically lacks jurisdiction over the preliminary injunction."  (Mot. at 2 n.2.)  Therefore, Defendants ask for an indicative ruling from this Court telling the First Circuit that this Court would dissolve the preliminary injunction if the First Circuit remands the case.

Federal Rule of Civil Procedure 62.1 provides that "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) ***deny the motion***; or (3) state either that it would

grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." (emphasis added.)  Defendants maintained an unconstitutional program for years, represented to this Court that they would not abandon their residency requirements in the face of a preliminary injunction, and concede that this Court lacks jurisdiction to dissolve the preliminary injunction.  Thus, Plaintiffs ask the Court to deny Defendants' Motion.

Moreover, Defendants have not shown they cured the constitutional violation.  The Second Circuit addressed this point in a cannabis licensing case.  The State of New York's cannabis agency enacted a cannabis licensing program that favored New York residents by requiring a New York cannabis conviction (the "CAURD Application Program").  *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 53 (2d Cir. 2025).   An applicant sued under the dormant Commerce Clause and received a preliminary injunction.  *Id*.  The case settled and the state began issuing licenses under the CAURD Application Program.  *Id*.

Several months later, different plaintiffs filed a second lawsuit in New York state court, alleging the CAURD Application Program violated the New York Constitution.  *Id*. at 54.  The New York cannabis agency's enabling statute provided that the agency must open its cannabis licensing program to all eligible applicants at the same time.  *Id*.  The CAURD Application Program, however, was only open to applicants with New York cannabis convictions, and other applicants who would be eligible under the state enabling statute (like veterans and distressed farmers) would not be eligible under later rounds.  *Id*.  Thus, the agency violated separation of powers by creating a licensing program inconsistent with the state enabling statute.  *Id*.  The state court enjoined New York from issuing cannabis licenses under the CAURD Application Program.  *Id*.

In response to the injunction against the CARUD Application Program, the New York cannabis agency created the Adult Use Application Program.  *Id*.  That program was open to all eligible applicants, as required by the state enabling statute.  *Id*.  Because the CAURD Application Program was under a state court injunction, the New York cannabis agency encouraged CAURD Applicants to re-apply in the Adult Use Application Program.  *Id*.

4

The Adult Use Application program was divided into two "pools." There was a "November Pool" for applicants who already owned or leased a property for its dispensary and submitted their applications in November; and a "December Pool" for applicants who did not already own or lease a property for their dispensary or who submitted their applications in December. *Id.* The agency would issue licenses to November Pool applicants before December Pool applicants. *Id.*

In a third lawsuit, an applicant in the December Pool sued over the Adult Use Application Program. In relevant part, the plaintiff alleged New York violated the dormant Commerce Clause by issuing licenses to November Pool applicants before December Pool applicants. The CAURD Application Program did not require applicants to own or lease property for their application. *Id.* at 58. Nor did the Adult Use Application Program's December Pool. *Id.* The November Pool, however, required applicants to own or lease property before applying. *Id.*

The Second Circuit concluded the plaintiff had plausibly alleged that New York violated the dormant Commerce Clause by prioritizing the November Pool. The CAURD Application Program had begun months earlier. Thus, while the CAURD Application Program did not require that applicants owned or leased property at the time of their applications, many of the applicants who were selected for licenses in the CAURD Application Program likely had been searching for properties before the state court issued the preliminary injunction against the CAURD Application Program. *Id.* Those CAURD Application Program applicants had likely snapped up most of the available properties that were zoned for cannabis use and outside the buffer zones. *Id.* Thus, it was easier for a former CAURD Application Program applicant to qualify for the Adult Use Application Program's November Pool than a typical applicant.

Thus, the plaintiff stated a claim that because the CAURD Application Program favored New York residents in violation of the dormant Commerce Clause on its face by requiring a New York conviction, and because the November Pool favored prior CAURD Application Program applicants by requiring property, the November Pool favored New York residents over nonresidents in violation of the dormant Commerce Clause.

5

As applied to Rhode Island, the State's prior program required applicants to have property to apply for a license.  The State has not stated whether property will be required for the new application program.  If property is required, the State has not stated how much time applicants will be provided to obtain property.  Given the small size of Rhode Island, and the fact that 98 applicants already have property from the program currently under the preliminary injunction, nonresidents will be at a severe disadvantage in obtaining property to participate in the application program.

Thus, it is far from clear that Defendants' amended application program passes constitutional muster, and they have not shown that the Court should issue an indicative ruling in their favor.

In their Motion, Rhode Island once again claims hardship, but once again their hardship is self-created.  Rhode Island could have taken the obvious path of repealing all challenged statutes and regulations and creating a separate application program under new statute and regulation numbers. As discussed above, New York established an entirely separate application program when the CAURD Application Program was enjoined.  If Rhode Island had done that, whether their separate application program could withstand a constitutional challenge in light of the property discussion above, remains to be seen.  But in this case, Rhode Island did not create a separate program.  Instead, they amended the challenged statutes and regulations that are under the preliminary injunction. Thus, Rhode Island created an amended program that is subject to the preliminary injunction, and they now ask this Court to issue an indicative order that the Court would dissolve the preliminary injunction without the program being established by Defendants as to property and timing.

"The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).  Defendants' amendment of the statutes in a manner that does not discuss the timing or property requirements of the upcoming application program does not meet that burden.

Moreover, Defendants represented to this Court at the prior hearing that they will not waive the white flag and voluntarily create an application program that does not favor Rhode Island

6

residents. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power. In this case ***the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated***." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (footnotes omitted) (emphasis added).

For these reasons, Plaintiff asks the Court to deny Defendants' Motion and rule on Plaintiff's Motion for Summary Judgment.

## II.    FACTS

The Court is familiar with the facts of this case.

## III.    ANALYSIS

### A.    A Party Seeking to Dissolve a Preliminary Injunction Based on Voluntary Cessation Bears a Heavy Burden

"The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power. In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (footnotes omitted) (emphasis added).

For mootness, including as against the government, "what matters is not whether a defendant repudiates its past actions, but what the defendant can prove about its future conduct." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 235 (2024).

**B.      Federal Rule of Civil Procedure 62.1**

Federal Rule of Civil Procedure 62.1 provides that "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

**C.      Defendants Have Not Shown the Preliminary Injunction Is Moot**

Defendants represented to this Court at the last hearing that they would not voluntarily cease their residency requirements even if placed under a preliminary injunction.

Defendants recent actions show their intention remains the same. During the meet and confer process ahead of this Motion, Plaintiff offered to stipulate to a summary judgment in their favor on the claims. If Defendants do not intend to pursue a licensing program that favors their residents, they could have accepted this offer and ended the case.

As noted above, Defendants have not shown they cured the constitutional violation. The Second Circuit addressed this point in a cannabis licensing case. A state may violate the dormant Commerce Clause by requiring applicants to have property to participate in the application program, particularly if the application program is only open for a matter of months and state residents have reason to obtain property before the application program is announced. See *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 53 (2d Cir. 2025).

Rhode Island's currently enjoined program requires applicants to have property to apply for a license. If property is required for the new application program, and the State provides an application period of only a few months for out-of-state applicants to obtain property, the application program violates the dormant Commerce Clause.

8

Thus, it is far from clear that Defendants' amended application program passes constitutional muster, and they have not shown that the Court should issue an indicative ruling in their favor.

Rhode Island did not repeal the challenged statutes and regulations and creating a separate application program under new statute and regulation numbers.  Instead, they amended the challenged statutes and regulations that are under the preliminary injunction.  They have not shown, however, that the new program is constitutional.

"The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).  Defendants' amendment of the statutes in a manner that does not discuss the timing or property requirements of the upcoming application program does not meet that burden.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.  In this case ***the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated***." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (footnotes omitted) (emphasis added).

For these reasons, Plaintiff asks the Court to deny Defendants' Motion and rule on Plaintiff's Motion for Summary Judgment.


/ / /


/ / /

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff asks this Court to deny Defendants' Motion for an Indicative Order and grant Plaintiff's Motion for Summary Judgment.

Dated: July 10, 2026

Respectfully submitted,

**JEFFREY M. JENSEN, PC**

By:   */s/ Jeffrey M. Jensen*
Jeffrey M. Jensen, Esq.
*Pro Hac Vice*
California Bar No. 262710
*Attorney for Plaintiff – Lead Counsel*
9903 Santa Monica Blvd. #890
Beverly Hills, CA 90212
(310) 909-7043
Email: jeff@jensen2.com

**LAW OFFICES OF ALBIN MOSER, P.C.**

By:   */s/ Albin Moser*
Albin Moser, Esq. (RI Bar #6166)
*Attorney for Plaintiff – Local Counsel*
166 Valley Street
Building 6M, Suite 103
Providence, RI 02909
(401) 861-2100
Email: amoser@albinmoser.com

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, a true copy of the foregoing document was served

upon each attorney of record listed below by electronic filing of this document with the United

States District Court for the District of Rhode Island.

Matthew I. Shaw, Esq.
Asst. Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903
mshaw@riag.ri.gov
(401) 274-4400

Chelsea Baittinger, Esq.
Special Asst. Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903
CBaittinger@riag.ri.gov
(401) 274-4400

Dated: July 10, 2026

By:    /s/ Jeffrey M. Jensen
       Jeffrey M. Jensen, Esq.