**UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND**

JUSTYNA JENSEN,                                    :
    *Plaintiff*,                                  :
                                                  :
v.                                                 :    Case No. 1:24-cv-00191-MSM-LDA
                                                  :
                                                  :
RHODE ISLAND CANNABIS CONTROL                      :
COMMISSION AND KIMBERLY AHERN,                     :
IN HER OFFICIAL CAPACITY,                          :
    *Defendants*,                                 :

**STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR EXPEDITED MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION AND FOR AN INDICATIVE RULING UNDER RULE 62.1**

Defendants Rhode Island Cannabis Control Commission and Michelle Reddish, in her official capacity[1] (hereinafter collectively "State Defendants"), hereby submit this Reply in Support of their Expedited Motion to Dissolve the Preliminary Injunction and for an Indicative Ruling under Rule 62.1 (hereinafter, "Rule 62.1 Motion"). *See* ECF 50. As State Defendants previously argued, following the General Assembly's recent substantive amendments to the adult-use retail licensing provisions of the Rhode Island Cannabis Act, the preliminary injunction against enforcement of certain pre-amendment provisions of the Cannabis Act is clearly now moot and unnecessary; accordingly, it should be dissolved. Nothing in Plaintiff Justyna Jensen's Response in Opposition to the Rule 62.1 Motion changes that reality.

---

[1] Kimberly Ahern, in her official capacity, was the original Defendant in this case; however, she has since been officially succeeded in the role of Commission Chair by Michelle Reddish, who is now "automatically substituted as a party." Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party."); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office.").

1

## ARGUMENT

**A. Plaintiff's Voluntary Cessation Arguments Misconstrue the Basis of State Defendants' Rule 62.1 Motion and Ignore Contrary First Circuit Precedent Recognizing that the Voluntary Cessation Exception to Mootness Does Not Apply when State Legislatures Enact Intervening Statutory Amendments**

In her Opposition, Plaintiff asserts that State Defendants' Rule 62.1 Motion is "based on the argument they voluntarily ceased the constitutional violations" on which the preliminary injunction was premised. ECF 51 at 3. That is fundamentally incorrect. As the Rule 62.1 Motion itself makes plain, the mootness of the preliminary injunction is not based on any intervening actions that the State Defendants have voluntarily taken; instead, it is entirely due to the superseding and overriding effect of the legislative amendments recently enacted by the Rhode Island General Assembly (and signed into law by Governor Daniel J. McKee). *See, e.g.*, ECF 50 at 1-4; *id.* at 6 ("The General Assembly's passage of a bill that removes the challenged requirements and criteria from the Cannabis Act and nullifies the previous license application process is a significant and dispositive change warranting dissolvement of the preliminary injunction."); *id.* at 14 ("The General Assembly has amended the Cannabis Act to remove the challenged sections entirely and to declare the prior application process null and void.").

Thus, the preliminary injunction was rendered moot not by an agency's voluntary cessation of a challenged practice, but by the independent actions of Rhode Island's political branches to materially amend the underlying statute. And as First Circuit precedent makes clear, that makes a dispositive difference for purposes of determining whether the voluntary cessation exception to mootness applies. In *Town of Portsmouth, Rhode Island v. Lewis*, 813 F.3d 54 (1st Cir. 2016)— where, as here, a plaintiff sued the head of the Rhode Island agency charged with implementing an allegedly unlawful state statute—the First Circuit found the voluntary cessation exception

inapplicable when Rhode Island's General Assembly subsequently acted to render plaintiff's legal challenge moot by materially changing the underlying statutory law. *See* 813 F.3d at 57-59.

"Indeed," the First Circuit in *Town of Portsmouth* noted, "although the Supreme Court has not hesitated to invoke the voluntary cessation exception when considering the conduct of private, municipal, and administrative defendants, it has not applied the exception to state legislatures. Rather, it has consistently and summarily held that a new state statute moots a case, without engaging in further inquiry." *Id.* at 59. (citing *Massachusetts v. Oakes*, 491 U.S. 576, 582–84 (1989); *Kremens v. Bartley*, 431 U.S. 119, 129 (1977); *Hall v. Beals*, 396 U.S. 45, 48 (1969); and *Berry v. Davis*, 242 U.S. 468, 470 (1917)). The Court further questioned whether the voluntary cessation exception could even meaningfully be said to apply in the circumstance where (as here), the intervening legislative change was not an action taken by the administrative agency defendant. *See id.* at 59 n.1 ("As we have stated in an analogous context, 'new legislation is generally considered an intervening, independent event and not voluntary action, particularly when the governmental entity taking the appeal, as here, is not part of the legislative branch.'") (quoting *Diffenderfer v. Gomez–Colon*, 587 F.3d 445, 452 (1st Cir. 2009)). And the Court also applied the usual "presum[ption] that a state legislature enacts laws in good faith," finding that "even were it theoretically possible to overcome the presumption that the legislature acted in good faith, a proposition that we doubt, the factual record [was] insufficient to that task." *Id.* at 59-60; *see also Board of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019).

The analysis from *Town of Portsmouth* is precisely on point and controlling here and defeats Plaintiff's attempt to invoke the voluntary cessation doctrine simply by citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982). *See* ECF 50 at 7-9. Quite unlike this case

(and *Town of Portsmouth*), *City of Mesquite* involved intervening changes by a *municipal* defendant rather than a state legislature; moreover, the municipal defendant in *City of Mesquite* had *expressly* "announced an intention to return to its original conduct after the litigation was concluded[.]" *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 55 (1st Cir. 1999) (citing *City of Mesquite*, 455 U.S. at 389 & n.11). Neither factor applies in this case, just as neither applied in *Town of Portsmouth*. In fact, this case presents an even stronger case for mootness than *Town of Portsmouth*; there, plaintiff was at least able to point to proposed future legislation that could potentially raise the same issues, which the First Circuit nevertheless found insufficient; here, Plaintiff has pointed to nothing on the part of the General Assembly (or Governor) that would overcome the clear indication that, by enacting and signing Senate Bill S3313, they intended to fully and permanently jettison the previously challenged provisions of the Cannabis Act. *See* 813 F.3d at 60; *see also O'Gorman*, 199 F.3d 50, 55 ("With no indication of a contrary intent, it would be unreasonable to presume that the Town would return to its prior zoning plans after the conclusion of this litigation. Thus, the voluntary-cessation exception to the mootness doctrine is inapplicable here.").

Plaintiff gets no further with her repeated (and uncited) insistence that the preliminary injunction should not be vacated because, at the hearing on Plaintiff's preliminary injunction motion, counsel for the State Defendants "was adamant that Defendants would not waive the white flag and voluntarily give up their residency requirements."[2] ECF 51 at 3; *see id.* at 6-7. That

---

[2] Although Plaintiff fails to support her argument with any citation to the hearing transcript, the State Defendants suspect she may be referencing the colloquy that appears on pages 29 to 30 of the transcript. In response to a question from the Court as to whether it was "the Commission's intent" as of the date of the March 20, 2026 hearing "to still go ahead and hold" the scheduled license "lottery in May" of this year, counsel for the State Defendants confirmed that the Commission had "set that proposed schedule[,]" that the Commission was obviously aware of the pending litigation, but that "the Commission ha[d] been working towards that really ever since this

argument provides no valid basis as to why the preliminary injunction should not be dissolved; if anything, the Commission's prior acknowledgment that (as a state agency created by the General Assembly, *see Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1050 (R.I. 2008)) it was bound to apply "the law that the General Assembly passed" only confirms that Commission will continue to do so by now applying the residency-neutral provisions of Senate Bill S3313. ECF 48 at 29:23-24.

It is beyond debate that the residency-based language that was the basis for this Court's preliminary injunction no longer appears in the Cannabis Act. Plaintiff does not argue otherwise. The Commission has no authority to deviate from the plain language of the General Assembly's intervening amendments, nor is there even a shred of evidence suggesting it would do so.[3] As a result, the Commission's previous indication that, absent a court directive to the contrary, it would adhere to the operative terms of the Cannabis Act as enacted by the General Assembly, only confirms that the Commission will follow the current operative terms of the Cannabis Act as

---

Act was passed" and "in the absence of any ruling from any court that what it is doing is actually unconstitutional, … has done what it can with the law that the General Assembly passed and is trying to take … the considerations of all applicants into account and move forward." ECF 48 at 29:11-30:1. Nothing in that exchange, or anything else in the transcript, indicates that the Commission will now do anything other than apply the newly amended, residence-neutral licensing provisions of the Cannabis Act as they currently stand after the General Assembly passed Senate Bill S3313.

[3] The State Defendants acknowledge that this Court previously disagreed with the Commission's interpretation of the pre-amendment social equity provisions of R.I. Gen. Laws § 21-28.11-3(34) and -3(39) to encompass otherwise qualifying prior cannabis offenses from jurisdictions outside Rhode Island. *See* ECF 42 at 19. However, Senate Bill S3313 fully addressed that issue by "expressly referencing equivalent offenses from 'another jurisdiction,' thus expressly making its provisions applicable to jurisdictions outside of Rhode Island." ECF 50 at 10; *see* ECF 50-1 at 6-8. As a result, that issue is moot, as the operative post-amendment provisions now expressly place out-of-state cannabis offenses on equal footing with equivalent Rhode Island cannabis offenses. And there is absolutely no reasonable basis to believe that the Commission will depart from both the current text of the post-amendment statute *and* its own prior practice of accepting equivalent out-of-state offenses.

amended by the General Assembly. *See* R.I. Gen. Laws § 21-28.11-17.2(c), ECF 50-1 at 25. This confirms the preliminary injunction is no longer needed because the challenged statutory provisions that were the basis of the preliminary injunction are no longer in the law that the Commission is required to follow. Instead, the current law expressly provides that the prior application process is null and void and that the Commission must proceed with a residency-neutral new process under the new terms of the law. Plaintiff provides no reason to doubt the Commission's stated intention and legal obligation to follow the current law.

**B. Any Constitutional Challenges Plaintiff May Raise to the Newly-Amended Statutory Provisions Provide No Basis to Maintain a Preliminary Injunction against the Pre-Amendment Provisions, and Plaintiff's Reliance on *Variscite NY Four* is Misplaced**

Plaintiff also argues that the preliminary injunction should not be dissolved as moot because if "property is required for the new application program" under new statutory provisions (which do not impose any residency-based requirements), and "the State provides an application period of only a few months for out-of-state applicants to obtain property, the application program violates the dormant Commerce Clause." ECF 50 at 8. Although that argument substantively fails on the merits (*see infra* at 9-11), the more fundamental issue for current purposes of the Rule 62.1 Motion is that Plaintiff is improperly attempting to blur the lines between the *pre*-amendment provisions of the Cannabis Act (which this Court enjoined after making specific findings they were likely unconstitutional) and the *post*-amendment provisions of the Cannabis Act (about which this Court has made *no* such findings, and which Plaintiff has not even moved to enjoin). If Plaintiff wishes to obtain an enforceable preliminary injunction against the newly-amended provisions of the Cannabis Act, she must first (1) properly move for such relief and (2) adequately establish, under the four-factor test for obtaining preliminary injunctive relief, that she is entitled to that extraordinary remedy under the materially different legal and factual circumstances that now exist after the enactment of Senate Bill S3313. The Court should reject Plaintiff's improper attempt, in

6

an Opposition brief, to bootstrap a now-moot preliminary injunction into a roadblock against future proceedings under a fundamentally different version of the Cannabis Act.[4]

Despite her assertion that "Rhode Island created an amended program that is subject to the preliminary injunction," ECF 51 at 6, in her Opposition "[P]laintiff has not cited one case for the rather extraordinary proposition [she] espouses [t]herein-i.e., that a court can enter a preliminary injunction prohibiting enforcement of statutes which thereafter undergo substantial amendment[] and that, without a new hearing or second motion for preliminary injunction, the preliminary injunction enjoins enforcement of the newly amended statutes. In fact, common sense and what little case law exists on the subject suggest otherwise." *Ctr. for Individual Freedom, Inc. v. Ireland*, No. CIV.A. 1:08-00190, 2008 WL 4452659, at *1 (S.D. W. Va. Sept. 29, 2008); *see id.* (recognizing that Federal Rule of Civil Procedure 52(a) requires a district court to "set forth the findings of fact and conclusions of law which constitute the grounds for" any preliminary injunction but that the court's prior factual findings supporting a preliminary injunction against enforcement of subsequently amended statutes were "[o]bviously … not tailored to the amended statutes" such that the court could not permissibly "enjoin enforcement of the statutes as amended based on its earlier findings").

---

[4] As previously stated in the Rule 62.1 Motion, the State Defendants respectfully do not believe that the preliminary injunction can plausibly be interpreted or understood to bar future licensing proceedings under the newly amended statute and seek to have the preliminary injunction dissolved and/or declared moot primarily out of an abundance of caution and in order to avoid any potential confusion or conflict. *See* ECF 50 at 2, 14-15, 17-19. As a result, and in accordance with the new statutory mandate of R.I. Gen. Laws § 21-28.11-17.2, the Commission currently plans to officially open the new residency-neutral social equity certification and license application proceedings on or about August 10, 2026 as it is required to do pursuant to the amended provisions of the Cannabis Act; however, the Commission will not do so if it receives an affirmative indication that this Court interprets the existing preliminary injunction as enjoining such actions.

This Court issued its preliminary injunction only after analyzing the partial state residency requirement (and other challenged provisions) present in the text of the pre-amendment Cannabis Act and making specific findings that the pre-amendment provisions were likely unconstitutional; this Court's other preliminary injunction findings were similarly premised upon the pre-amendment provisions of the Cannabis Act and their effect. *See* ECF 42. But as the State Defendants previously argued (and Plaintiff has now failed to adequately rebut), the General Assembly removed all of the alleged constitutional infirmities from the relevant statutory provisions through Senate Bill S3313.[5] As a result, Senate Bill S3313 has completely removed the underlying predicates of Plaintiff's constitutional challenges (in both her Complaint and her June 2024 motion for preliminary injunction) while also materially altering the remaining elements of the preliminary injunction analysis.[6]

---

[5] Plaintiff's suggestion that "Rhode Island could have taken the obvious path of repealing all challenged statutes and regulations and creating a separate application program under new statute and regulation numbers" makes little sense. ECF 51 at 6. Substantively, that is precisely what the General Assembly accomplished through Senate Bill S3313 when it materially repealed or amended all previously challenged (and enjoined) provisions, voided all certifications and applications submitted under the prior version of the Cannabis Act, and directed the Commission to start over with a new licensing process under the newly operative and residency-neutral provisions. *See* ECF 50 at 7-15. And Plaintiff once again provides no citation supporting her apparent belief that the empty formalism of "new statute and regulation numbers" should control the Court's analysis of whether the preliminary injunction is now effectively moot. ECF 51 at 6; *cf.* Wright & Miller, 13C Federal Practice & Procedure Jurisdiction § 3533.6 (3d ed.) ("Amendment, for that matter, can be seen as partial repeal; as statutes grow in length and the range of subjects addressed it may become difficult—and in any event pointless—to distinguish between amendment and repeal. … Mootness analysis should focus on the legislative change, whether to substitute new regulation for old or to abandon any regulation by positive enactment.").

[6] For example, while acknowledging that "the balance of equities" and public interest presented "a closer call" given the material interests of third-party applicants, the Court found those applicants (and the State Defendants') interests' outweighed by Plaintiff's "*complete* exclusion from the market, which is what would occur if the [Commission] is allowed to proceed with the licensing program under the *current* Act and regulations." ECF 42 at 26 (emphases added). Because the Cannabis Act has since been amended to remove the complete barrier this Court found dispositive, the balance of equities and public interest now tilt sharply in State Defendants' favor.

As such, Plaintiff's argument—that if "property is required for the new application program" under amended statutory provisions that do not impose any residency-based requirements, and "the State provides an application period of only a few months for out-of-state applicants to obtain property, the application program violates the dormant Commerce Clause", ECF 51 at 8—at best could only serve as an argument in support of a motion for a new preliminary injunction against the new statutory provisions. It does not at all refute State Defendants' argument that the existing preliminary injunction, which was based solely on statutory provisions that no longer exist, is moot and should be dissolved. As Plaintiff has not even filed a motion seeking such a new preliminary injunction, the Court need not even reach that issue.

But if the Court did reach it, the argument also fails on the merits. While Plaintiff grounds her argument on *Variscite NY Four, LLC v. New York State Cannabis Control Board*, 152 F.4th 47 (2d Cir. 2025), *see* ECF 51 at 4-5, she conveniently fails to mention the Second Circuit's bottom-line conclusion in that case: that the plaintiff, in raising a similar legal theory, ultimately failed to show a likelihood of success on the merits of that dormant Commerce Clause challenge. *See Variscite NY Four*, 152 F.4th at 65 ("[Plaintiff] has not adduced sufficient evidence that the November Pool had the purpose or effect of prioritizing New Yorkers. We therefore cannot apply strict scrutiny at this stage. … [E]ven assuming that the creation of the November Pool incidentally burdens the interstate marijuana market, the burden it imposes is not 'clearly excessive.' Consequently, Variscite has not shown that it is likely to succeed on the merits of its dormant Commerce Clause challenge to the November Pool.").

---

Similarly, the Court's irreparable harm analysis was largely grounded on Plaintiff's likelihood of success on the merits on challenges to provisions that have since been materially amended to remove the challenged constitutional infirmities and allow Plaintiff (and other out-of-state residents) "the opportunity to enter the market at the same time as other applicants." *Id.* at 23.

Just like the plaintiff in *Variscite NY Four*, Plaintiff fails to offer "sufficient evidence" that the "facially neutral" post-amendment provisions of the Cannabis Act, or future license application proceedings under those new provisions, have the "purpose or effect of prioritizing" Rhode Island residents. *Id.* Again, the post-amendment provisions do not discriminate based on applicants' state residency, and Senate Bill S3313 also explicitly rendered the "social equity certification and license application processes previously run by the [C]ommission" under the pre-amendment provisions "null and/or void" before directing the Commission to institute new social equity certification and license application proceedings under the amended statute. ECF 50 at 13-14.

Against those clear indications that future licensing proceedings will not discriminate against out-of-state residents and that the amendments were not "created as a vehicle to preference" Rhode Islanders (or the prior applicants whose applications are now null and void), Plaintiff offers only an extended chain of speculation. *Variscite NY Four*, 152 F.4th at 65. Without evidence or citation, Plaintiff would have this Court assume that all 98 prior applicants had properties, that they all currently (over seven months after the prior application period closed, *see* ECF 37-1 at ¶ 20, and over three months after this Court enjoined the prior application process) still maintain control over those properties, and that their control over those 98 properties in turn "severe[ly] disadvantages" the ability of any other would-be applicants to obtain any suitable commercial real estate anywhere in Rhode Island, such that any future licensing proceedings by the Commission that provide "only a few months" to apply would necessarily constitute impermissible discrimination against out-of-state residents. ECF 51 at 8. As in *Variscite NY Four*,[7] and even

---

[7] The factual scenario in *Variscite NY Four* is also distinguishable in several material respects that further defeat Plaintiff's argument here. In that case, the challenged "November Pool" took "precedence" over a later set of applicants in the "December Pool", who did not need to show proof of property ownership, and involved a period of 55 days between New York's official announcement of regulations governing the "new" adult-use licensing program and the deadline

assuming the underlying theory is logically viable, those arguments are devoid of factual support, especially given the additional lack of concrete evidence of any efforts Plaintiff has made or plans to make to actually obtain property in order to participate in future licensing proceedings. The Court should thus reject Plaintiff's bare *ipse dixit* that future license application proceedings under residency-neutral requirements would violate the dormant Commerce Clause.

More to the point and as noted above, that argument is not relevant to whether the preliminary injunction should be dissolved and could only potentially be relevant to a question that is not currently before this Court: namely, whether Plaintiff would be able to obtain a preliminary injunction against enforcement of the post-amendment provisions of the Cannabis Act if she

---

to submit applications for the November Pool. *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 54 (2d Cir. 2025); *see Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, No. 1:23-CV-01599, 2024 WL 406490, at *3 (N.D.N.Y. Feb. 2, 2024), vacated and remanded, 152 F.4th 47 (2d Cir. 2025) ("On September 27, 2023, the OCM adopted and/or amended regulations for the adult use market ('the Adult Use Regulations') as to how applications … will be reviewed and selected. … The application window for Adult Use Licenses for all types of applications … opened on October 4, 2023. … The application window 'for applicants seeking a retail dispensary license with proof of control over a proposed premises from which they intend to operate' closed on November 17, 2023 (the 'November Applications').").

Here, and unlike in New York, future license proceedings under the amended provisions of the Cannabis Act will *not* take "precedence" over other licensing proceedings that would not require applicants to show control over a physical location, as no such proceedings will take place. *Variscite NY Four*, 152 F.4th at 54; *cf.* 560-RICR-10-10-1.3.1.A.5 (requiring "[e]ach application for a cannabis establishment license" to include information "[r]egarding the proposed physical location of the cannabis establishment," including evidence of "either ownership or property or [a] lease agreement"). The General Assembly specifically voided all prior applications and provided that all new applications will proceed in one unified pool under the same new residency-neutral criteria that applies equally to all applicants. And Senate Bill S3313 provides for a period of up to 60 days before the Commission even needs to *open* a future application period, while any *closing* application deadline will only occur at the end of the additional submission period authorized by the Commission, *see* ECF 50 at 13-14; as previously stated, the Commission currently intends to open a future application period on or about the end of that 60-day period. *See supra* at 6-7 n.4. As a result, the relevant time period between the applicable change in the governing law (which placed potential applicants on notice of future licensing proceedings) and the closing of the licensing application deadline will necessarily be longer than the 55 days at issue in *Variscite NY Four*, quite likely by a significant margin.

actually files a motion for such relief. But as previously discussed, Plaintiff has not done so, and the Court should reject her improper attempt to extend the preliminary injunction beyond its actual terms and underlying findings to automatically bar future licensing proceedings under materially different statutory provisions.

### C.  Plaintiff's Summary Judgment Arguments Are Irrelevant and Cannot Overcome the Reality that the Preliminary Injunction is Moot and Unnecessary

Finally, Plaintiff's various assertions that this Court should grant partial summary judgment in her favor (or that State Defendants should stipulate to summary judgment) are baseless and irrelevant. Plaintiff fails to explain how the fact that she previously moved for summary judgment (solely on her dormant Commerce Clause claim)[8] against the *pre-amendment* provisions of the Cannabis Act has any bearing on the fact that this Court's preliminary injunction against those provisions has now been rendered moot by the subsequent statutory amendments to the Cannabis Act.

Nor can she; the relevant case law clearly establishes that Plaintiff's December 2025 partial summary judgment motion (like her underlying claims in her Complaint against the pre-amendment challenged provisions) is now also moot as well. *See, e.g.*, *Khodara Env't, Inc. ex rel.*

---

[8] As the Court is aware, after Plaintiff moved for partial summary judgment, the State Defendants filed a supported request for relief under Federal Rule of Civil Procedure 56(d), which empowers the Court to either "defer considering" a motion for summary judgment "or deny it" when the nonmoving party shows that it currently "cannot present facts essential to justify its opposition" to the motion. ECF 34 at 3 (quoting Fed. R. Civ. P 56(d)); *see id.* at 3-6; ECF 34-1; ECF 36. At the March 20, 2026 consolidated hearing on Plaintiff's preliminary injunction motion and State Defendants' motion to dismiss, the Court indicated that it was indeed deferring on summary judgment. *See* ECF 48 at 35:1-3 ("[T]he Court is going to hold off on the issue with respect to the summary judgment[.]"). Since that time, Plaintiff has not filed a renewed motion for summary judgment; nor has she ever filed any motion for summary judgment challenging the now-amended provisions of the Cannabis Act or attempted to amend her complaint to state any claims challenging the now-amended provisions. As noted in State Defendants' Rule 62.1 Motion, State Defendants are prioritizing this motion to dissolve the preliminary injunction due to its time sensitivity, but also intend to move for judgment in the underlying case because it is moot for the same reasons the preliminary injunction is moot.

*Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001) ("Where a law is amended so as to remove its challenged features, the claim ... becomes moot as to those features."). Plaintiff's summary judgment motion (like her June 2024 motion for preliminary injunction and her underlying complaint) sought only prospective relief against enforcement of statutory language that has since been either materially amended or completely repealed. It is blackletter law that "parties have no legally cognizable interest in the constitutional validity of an obsolete statute", *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1223 (10th Cir. 2001), and that federal courts are "without power to grant injunctive and declaratory relief" against statutory provisions that "no longer exist." *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54-55 (1st Cir. 1999) (citing, inter alia, *Diffenderfer v. Central Baptist Church, Inc.*, 404 U.S. 412, 414-15 (1972)). It would be inappropriate and violate federal mootness doctrine for the parties or this Court to reach the merits of Plaintiff's prior summary judgment arguments, all of which pertain to the constitutionality of statutory provisions that no longer exist; doing so would be a textbook case of rendering a prohibited advisory opinion.

As a result, Plaintiff's current efforts to resurrect her previously deferred motion for partial summary judgment cannot overcome either (1) the prior grounds for deferral identified by State Defendants, *see* ECF 34 at 3-6; or (2) the new and additional ground of mootness. Nor do either Plaintiff or the State Defendants have any valid or enforceable interest in entering into stipulations about the now purely hypothetical effect of defunct statutory provisions. And the tangential issue of Plaintiff's previously deferred and now moot summary judgment motion does not constitute a legitimate argument as to why the preliminary injunction should not be dissolved as moot.

13

## CONCLUSION

For the reasons stated above and in the State Defendants' Rule 62.1 Motion, *see* ECF 50, the State Defendants respectfully ask that his Court dissolve the preliminary injunction and/or issue an indicative ruling that it would dissolve the preliminary injunction if the First Circuit remands State Defendants' appeal for that purpose.[9] In the alternative, the State Defendants respectfully ask the Court to issue an order making clear that the preliminary injunction is now moot and has no effect on the Commission's plans to institute future social equity certification and license application proceedings pursuant to the amended Cannabis Act.

Respectfully Submitted,

**STATE DEFENDANTS,**

By Their Attorneys:

**PETER F. NERONHA
ATTORNEY GENERAL**

*/s/ Patrick Reynolds*
*/s/ Jeff Kidd*
Patrick Reynolds (#10459)
Jeff Kidd (#10416)
Special Assistant Attorneys General
150 South Main Street

---

[9] On July 16, 2026, the First Circuit entered an order granting State Defendants' motion to stay proceedings in their appeal from the preliminary injunction pending this Court's resolution of this Rule 62.1 Motion. *See* Ex. A (*Jensen v. Rhode Island Cannabis Control Commission, et al.*, 26-1406, July 16, 2026 Order). The First Circuit also directed State Defendants "to file a status report within fourteen (14) days of the entry of this order and every fourteen (14) days thereafter" and to "promptly inform" the First Circuit "of any relevant rulings in the district court and shall file an appropriate motion regarding further proceedings in this appeal." *Id.* The First Circuit issued a similar order in the related appeal, *Kenney, v. Rhode Island Cannabis Control Commission, et al.*, 26-1405. State Defendants submit that their Rule 62.1 Motion is ripe for decision and respectfully renew their request for an expedited ruling in light of the First Circuit's request for prompt and ongoing status updates and the August 10, 2026 statutory deadline for commencing a new licensing program under the amended statute.

Providence, Rhode Island 02903
Tel: (401) 274-4400, Ext 2109
preynolds@riag.ri.gov
jkidd@riag.ri.gov

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 17th day of July, 2026, I filed the within document via the ECF filing system and that a copy is available for viewing and downloading

*/s/ Abigail Clark*

15